[Cite as *State v. Elliot*, 2013-Ohio-2386.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  13-12-43

    v.

KARLTON J. ELLIOT, JR.,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Tiffin Municipal Court
Trial Court No. 12 CRB 687A-B

Judgment Affirmed

Date of Decision:  June 10, 2013

APPEARANCES:

    *Geoffrey Oglesby*  for Appellant

    *Richard Palau*  for Appellee

**PRESTON, P.J.**

{¶1} Defendant-appellant, Karlton J. Elliot, Jr., appeals the Tiffin Municipal Court's judgment entries of conviction for passing bad checks. We affirm.

{¶2} On April 6, 2012, Elliot presented check number 1003 in the amount of $476.16 payable to the Tiffin Paper Company ("TPC") for the purchase of supplies for Patrone's Pizza shop, which check was returned for insufficient funds. (Oct. 1, 2012 Tr. at 8-9); (State's Ex. D). On April 13, 2012, Elliot presented check number 506 in the amount of $422.10 to TPC for the purchase of supplies for Patrone's Pizza shop, which check was returned for insufficient funds. (*Id.*); (State's Ex. C). After the checks were returned to TPC for insufficient funds, TPC sent K&C Cellular, the address listed on the checks, and Patrone's Pizza certified letters concerning the returned checks. (Oct. 1, 2012 Tr. at 9). The owner of Patrone's Pizza indicated that he was not responsible for the returned checks since he gave that business account to Elliot. (*Id.* at 9-10). The certified letter sent to K&C Cellular was returned to TPC undelivered. (*Id.* at 9, 15).

{¶3} Thereafter, TPC reported the bad checks to the Tiffin Police Department. (*Id.* at 10, 15). Officer Rachelle Nye, assigned to the case, unsuccessfully attempted to locate Elliot at K&C Cellular several times. (*Id.* at 16).

{¶4} On July 19, 2012, Elliot was in the police station on an unrelated matter and was personally served with a bad check notice. (*Id.* at 13-14, 16); (State's Ex. A-B). The bad check notice indicated that Elliot was to pay TPC for the supplies he purchased by August 2, 2012 or charges would be filed against him. (*Id.* at 16); (*Id.*). Elliot failed to pay TPC as required. (Oct. 1, 2012 Tr. at 16).

{¶5} On August 6, 2012, Officer Nye filed two complaints against Elliot charging him with passing bad checks in violation of R.C. 2913.11, first-degree misdemeanors, and assigned trial court case number 12CRB678A-B. (Doc. No. 1).

{¶6} On August 8, 2012, Elliot pled not guilty at arraignment. (Doc. Nos. 3-4).

{¶7} On October 1, 2012, after a trial to the court, the trial court found Elliot guilty on both charges. (Oct. 1, 2012 Tr. at 22). The trial court sentenced Elliot to 180 days in jail; however, it conditionally suspended the jail time and sentenced Elliot to two years of intensive community control. (Doc. Nos. 24-25).

{¶8} On October 11, 2012, Elliot filed a notice of appeal. (Doc. No. 26). Elliot raises three assignments of error for our review.

### Assignment of Error No. I

**The trial court lacked jurisdiction based on a complaint that was improperly notarized.**

{¶9} In his first assignment of error, Elliot argues that the trial court lacked subject-matter jurisdiction since the commission of the notary who notarized the complaining officer's signature was expired.

{¶10} As an initial matter, we note that the State filed a motion for an extension to file its appellee brief with this Court, which was denied. Consequently, no appellee's brief was filed in this case. Under these circumstances, App.R. 18(C) provides that this Court "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." After reviewing the record, we conclude that appellant's brief does not reasonably appear to sustain a reversal.

{¶11} The filing of a valid complaint is a prerequisite to the municipal court obtaining subject-matter jurisdiction. *State v. Miller*, 47 Ohio App.3d 113, 114 (1st Dist.1988); *New Albany v. Dalton*, 104 Ohio App.3d 307, 311 (10th Dist.1995); *State v. Mbdoji*, 129 Ohio St.3d 325, 2011-Ohio-2880, paragraph one of the syllabus. Absent a valid complaint, the municipal court is without subject-matter jurisdiction, and the resulting conviction is void. *State v. Bess*, 1st Dist. No. C-110700, 2012-Ohio-3333, ¶ 10, citing *State v. Green*, 48 Ohio App.3d 121, 122 (11th Dist.1988); *Miller*, 47 Ohio App.3d at 114; *Dalton*, 104 Ohio App.3d at 311. Subject-matter jurisdiction cannot be waived or forfeited and can be raised at any time. *Mbdoji* at ¶ 10. *See also* Crim.R. 12(C)(2).

{¶12} Crim.R. 3 defines what constitutes a valid complaint. *Mbdoji* at ¶ 12. Crim.R. 3 requires that the complaint (1) contain "a written statement of the essential facts constituting the offense charged," (2) "state the numerical designation of the applicable statute or ordinance," and (3) "be made upon oath before any person authorized by law to administer oaths."

{¶13} The complaints in this case were filed on August 6, 2012; however, the commission of the notary who notarized Officer Rachelle Nye's signature expired "03/31/2012." (Doc. No. 1). Elliot argues that since the notary's commission was expired, the notary was no longer "authorized by law to administer oaths"; and therefore, the complaints were invalid under Crim.R.3, and the trial court lacked subject-matter jurisdiction. We disagree.

{¶14} R.C. 147.12 provides that "[a]n official act done by a notary public after the expiration of the notary public's term of office or after the notary public resigns the notary public's commission is as valid as if done during the notary public's term of office." Consequently, the notarization here is valid even if the notary's commission was, in fact, expired. While the Court of Appeals has reversed convictions for notary issues under Crim.R. 3, those cases involve situations where notarization was altogether missing. *State v. Bess*, 1st Dist. No. C-110700, 2012-Ohio-3333; *Dalton*, 104 Ohio App.3d 307. In this case, the complaint was signed and sealed by the notary, but the notary's commission was,

on its face, expired. Pursuant to R.C. 147.12, though, the notarization is still valid. Therefore, we conclude that the complaint was valid under Crim.R. 3, and the trial court's subject-matter jurisdiction was properly invoked.

{¶15} Elliot's first assignment of error is, therefore, overruled.

### Assignment of Error No. II

**A verdict is against the manifest weight of the evidence and evidence is insufficient when the trial court errs in finding that appellant had been properly notified of dishonor when appellant was charged with writing a bad check in violation of R.C. 2913.11[.]**

{¶16} In his second assignment of error, Elliot argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence since there was no evidence of his specific intent to defraud the victim.

{¶17} As an initial matter, Elliot failed to move for a judgment of acquittal pursuant to Crim.R. 29(A); and therefore, he waived all but plain error on appeal. *State v. Robinson*, 177 Ohio App.3d 560, 2008-Ohio-4160, ¶ 18 (3d Dist.), overruled on other grounds, 124 Ohio St.3d 76, 2009-Ohio-5937. That being said, this Court has recognized that a conviction based upon insufficient evidence almost always amounts to plain error because "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Alvarado*, 3d Dist. No. 12-07-14, 2008-Ohio-4411, ¶ 24, citing *State v. Mossburg*, 3d Dist. No.

15-06-10, 2007-Ohio-3343, ¶ 35, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997) and *State v. Coe*, 153 Ohio App.3d 44, 2003-Ohio-2732, ¶ 19 (4th Dist.). *See also State v. Adams*, 3d Dist. No. 4-09-16, 2009-Ohio-6863, ¶ 7.

**{¶18}** When reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus.

**{¶19}** In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶20}** Elliot was convicted of passing bad checks in violation of R.C. 2913.11, which provides, in relevant part:

(B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check * * *, knowing that it will be dishonored * * *.

(C) For purposes of this section, a person who issues or transfers a check * * * is presumed to know that it will be dishonored if * * *:

* * *

(2) The check * * * was properly refused payment for insufficient funds upon presentment within thirty days after issue or the stated date, whichever is later, and the liability of the drawer, indorser, or any party who may be liable thereon is not discharged by payment or satisfaction within ten days after receiving notice of dishonor.

{¶21} The State presented three witnesses at trial. Jeanie Little, a TPC employee, identified State's exhibit C as check number 506 for $422.10 issued to TPC, which was a "nonsufficient fund check" ("NSF check"). (Oct. 1, 2012 Tr. at 8-9). Little also identified State's exhibit D as check number 1003 for $476.16 issued to TPC for pizza shop supplies, which was returned for nonsufficient funds. (*Id*. at 8). Little testified that, after the checks were returned, TPC sent letters to Patrone's Pizza, the pizza shop for which the supplies were purchased, and to K&C Cellular, the address listed on the checks. (*Id*. at 9). She testified that the letters came back as "never received." (*Id*.). Little testified that the owner of

Patrone's Pizza also called her and told her that he was not responsible for the shop supply account; rather, Elliot took over that account. (*Id*. at 9-10). Little testified that TPC never received any funds as a result of the NSF checks. (*Id*. at 10).

{¶22} Officer Rachelle Nye testified that TPC filed a complaint with the police department of receiving bad checks. (*Id*. at 15). Officer Nye testified that Little provided her with copies of the checks, the actual checks, and information from the bank indicating that the checks were returned for insufficient funds. (*Id*.). Little also advised Officer Nye that TPC attempted to serve Elliot with notice of the returned checks by certified mail, but this was unsuccessful. (*Id*.). Officer Nye testified that she attempted to locate Elliot at the Tiffin K&C Cellular store several times unsuccessfully. (*Id*. at 16). She testified that she subsequently learned that Sergeant Marquis contacted Elliot at the police station and served him with the 10-day notice certification. (*Id*.). Elliot was supposed to pay TPC the money he owed by August 2, 2012 but failed to do so. (*Id*.). Officer Nye filed charges against Elliot on August 7, 2012 after he failed to pay TPC. (*Id*. at 15-16).

{¶23} Sergeant Mark Marquis testified that he served Elliot personally with the notice of bad check form on July 19, 2012 when he encountered Elliot in the police station on an unrelated matter. (*Id*. at 12-13). Sergeant Marquis identified State's exhibits A and B as copies of the notice that he served on Elliot indicating

that his bank refused payment on check number 506 in the amount of $466.10 and check number 1003 in the amount of $476.16 for insufficient funds. (*Id*. at 13).

**{¶24}** No witnesses appeared on Elliot's behalf.

**{¶25}** Elliot argues that the evidence presented failed to demonstrate that he received notice of the returned checks. This argument is meritless. Sergeant Marquis testified that he personally served Elliot with notice of the returned checks, and copies of the notice, signed by Elliot, are included in the record. (Oct. 1, 2012 Tr. at 12-13); (State's Exs. A-B).

**{¶26}** Next, Elliot argues that the record fails to show that he acted with the "purpose to defraud" TPC since there was no evidence that the checking account was closed or that the names on the checks were fictitious. We disagree.

**{¶27}** Generally, "[a] person acts purposely when it is his specific intention to cause a certain result * * *." R.C. 2901.22(A). "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978). "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." *State v. Huffman*, 131 Ohio St. 27, 28 (1936). Based upon the evidence presented, the trial court, as trier of fact, could have

reasonably concluded that Elliot intended to defraud TPC from the money he owed them. A reasonable trier of fact could have concluded that Elliot intended to defraud TPC, in part, due to the fact that Elliot appeared to be evading TPC in their effort to obtain payment by disregarding the certified letters. Officer Nye also testified that she attempted to locate Elliot at his business on several occasions without any success. Based upon the foregoing, we cannot conclude that the record contained insufficient evidence of Elliot's purpose to defraud.

{¶28} Finally, Elliot argues that his conviction is against the manifest weight of the evidence since the trial court erroneously found that he received notice that the checks had been returned to TPC for insufficient funds. As we mentioned above, the record clearly refutes this claim. Elliot's conviction is not, therefore, against the manifest weight of the evidence.

{¶29} Elliot's second assignment of error is, therefore, overruled.

### Assignment of Error No. III

**The State of Ohio violates due proces [sic] when the State acts [sic] an agent of a co-called [sic] victim by initiating notice of dishonor by printing and serving the notice of dishonor on a defendant.**

{¶30} In his third assignment of error, Elliot argues that the State violates a defendant's due process rights by creating and serving the notice of dishonor upon a defendant on the victim's behalf.

**{¶31}** To begin with, we note that the statute does not specify *who* must serve the issuer notice that the check was dishonored. Rather, the statute merely provides for a presumption that the check's issuer knows that the check will be dishonored if he fails to satisfy the debt owed to the recipient of the NSF check within 10 days after receiving notice that the check was dishonored. R.C. 2911.13(C)(2).

**{¶32}** Elliot argues that allowing the State to serve the 10-day notice, thereby creating an element of the substantive criminal offense, violates due process. Elliot cites *U.S. v. McQuinn*, 612 F.2d 1193 (9th Cir.1980) (per curiam) in support of his argument. This case is easily distinguishable from *McQuinn* since that case, unlike this case, involved an undercover informant who allegedly threatened to kill the defendant if he failed to complete a bank robbery for which the defendant was subsequently charged and convicted. Law enforcement served the notice upon Elliot while he was in the police station—open to the general public—for an unrelated matter. Law enforcement agents did not threaten Elliot's life if he failed to commit a criminal offense as allegedly occurred in *McQuinn*. Therefore, we are not persuaded that law enforcement engaged in "outrageous conduct" that violated Elliot's right to due process of law. *See U.S. v. Russell*, 411 U.S. 423, 431-432, 93 S.Ct. 1637 (1973).

Case No. 13-12-43

{¶33} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**ROGERS, J. Concurring Separately.**

{¶34} I fully concur with the result reached by the majority on the second and third assignments or error. I concur in judgment only as to the result on the first assignment of error, and feel it necessary to comment.

{¶35} My concurrence on the first assignment is compelled by the existence of R.C. 147.12.

{¶36} The statute is oxymoronic – and if that is not a proper word, it still makes more sense than this statute! R.C. 147.12 states, in its entirety,

> [a]n official act done by a notary public after the expiration of the notary public's term of office or after the notary public resigns the notary public's commission is as valid as if done during the notary public's term of office.

{¶37} First of all, how can one perform an official act without being, in some form, an official? Common sense commands that if a notary public's commission has either expired or been resigned, that individual no longer

-13-

possesses the authority to perform official acts as a notary public. Further, it follows that any act done by the once-notary public is simply and completely void.

{¶38} Secondly, having resigned a notary commission is totally incompatible and irreconcilable with continuing to act in the capacity which has been resigned. The resignation is in effect a promise not to act as a notary. And yet, continuing to act is not only condoned, but sanctioned, by our legislature, albeit with a nominal penalty. *See* R.C. 147.11 ("A person appointed notary public who performs any act as such after the expiration of the person's term of office or after the person resigns the person's commission, knowing that the person's term has expired or that the person has resigned, shall forfeit not more than five hundred dollars * * *"); R.C. 147.99 (subjecting a notary public who violates R.C. 147.10, which prohibits a notary public from acting as such after their commission has either expired or been resigned, to a fine of not more than $500.00).