[Cite as *State v. Workman*, 2015-Ohio-5049.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                 CASE NO. 2-15-05

     v.

TIMOTHY SCOTT WORKMAN,          O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2014-CR-75

**Judgment Affirmed**

Date of Decision: December 7, 2015

APPEARANCES:

    *Stephen A. Goldmeier* **for Appellant**

    *R. Andrew Augsburger* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Timothy Scott Workman ("Workman"), appeals the February 5, 2015 judgment entry of sentence of the Auglaize County Court of Common Pleas. He argues that the trial court erred in denying his motion to suppress evidence and that his tampering-with-evidence conviction is based on insufficient evidence. For the reasons that follow, we affirm.

{¶2} This case stems from an investigation of Workman for taking nude photos of juvenile girls and intending to conduct another photo and a video shoot in 2013. Workman was arrested after two juvenile girls reported to law enforcement officers that Workman took nude photos of them in March and July 2013 at the Knights Inn in Wapakoneta, Ohio, and Workman arranged with law enforcement officers posing as one of the juvenile girls to conduct another photo and video shoot on September 30, 2013 at the Americas Best Value Inn & Suites. (Sept. 29-Oct. 3, 2014 Tr. at 182-185). Workman was arrested on September 30, 2013 after he rented a room at the Americas Best Value Inn & Suites in St. Marys, Ohio. (*Id.* at 185-186).

{¶3} On April 30, 2014, the Auglaize County Grand Jury indicted Workman on 79 counts: Counts 1 through 39 of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(1), second-degree felonies; Counts 40 through 78 of illegal use of a minor in nudity-oriented material in

violation of R.C. 2907.323(A)(3), fifth-degree felonies; and Count 79 of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. (Doc. No. 1).

{¶4} On May 14, 2014, Workman appeared for arraignment and entered pleas of not guilty. (Doc. No. 15).

{¶5} On July 10, 2014, Workman filed a motion to suppress evidence "seized as a result of the search of [Workman's] van" and "any and all evidence found on a memory chip which was searched by law enforcement without a search warrant." (Doc. No. 38). In particular, Workman argued that the impounding and inventory search of his vehicle was unlawful and that the State impermissibly searched a second "32 GB Sandisk micro SD card inside of the SD adapter" because it was not covered by the October 22, 2013 search warrant. (*Id.*). On August 1, 2014, the State filed a memorandum in opposition to Workman's motion to suppress. (Doc. No. 83). On August 5, 2014, Workman filed a reply to the State's memorandum in opposition to his motion to suppress. (Doc. No. 87). On August 8, 2014, the State filed a response to Workman's reply to its memorandum in opposition to his motion to suppress. (Doc. No. 102).

{¶6} After a hearing on July 29, 2014, the trial court denied Workman's motion to suppress on August 8, 2014. (Doc. No. 103).

{¶7} A jury trial was held on September 29 through October 3, 2014. (Sept. 29-Oct. 3, 2014 Tr. at 1). The jury found Workman guilty of all 79 counts of the indictment. (Doc. Nos. 202-280). On February 4, 2015, the trial court sentenced Workman to six years in prison as to Counts 1 through 30 each, eight years in prison as to Counts 31 through 38 each, seven years in prison as to Count 39, twelve months in prison as to Counts 40 through 78 each, and thirty-six months in prison as to Count 79. (Doc. No. 368). The trial court ordered that Workman serve the terms as follows:

Group A: Counts One, Three, Seven, Eight, Eleven, and Thirty Nine shall be served consecutively to each other;

Group B: Counts Two, Four, Five, Six, Nine and Thirty-Six shall be served consecutively to each other, but concurrent to Group A;

Group C: Counts Ten, Twelve, Thirteen, Fourteen, Fifteen, and Thirty-Seven shall be served consecutively to each other, but concurrent to Group A;

Group D: Counts Sixteen, Seventeen, Eighteen, Nineteen, Twenty-One, and Thirty-Eight shall be served consecutively to each other, but concurrent to Group A;

Group E:  Counts Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Seven, Twenty-Eight, and Twenty-Nine shall be served consecutively to each other, but concurrent to Group A;

Group F:  Counts Thirty-One, Thirty-Two, Thirty-Three, Thirty-Four, and Thirty-Five shall be served consecutively to each other, but concurrent to Group A;

Group G:  Counts Forty through Seventy-Eight shall be served consecutively to each other, but concurrent to Group A;

Count Seventy-Nine shall be served consecutively to Group A[,] for an aggregate sentence of 40 years.

(*Id.*).  The trial court filed its sentencing entry on February 5, 2015.  (*Id.*).

{¶8} Workman filed his notice of appeal on March 9, 2015.  (Doc. No. 381).  He raises two assignments of error for our review.

**Assignment of Error No. I**

**Because the inventory search of Mr. Workman's utility truck was unreasonable, and because the search of the second SD card was unwarranted, the trial court erred in denying Mr. Workman's motion to suppress evidence against him.  (Sup.T. at 20, 22, 25, 35, 47, 61, 62-70, 85; T.T. at 424, 425).**

{¶9} In his first assignment of error, Workman argues that the trial court erred by denying his motion to suppress evidence.  He presents two arguments: (1) the impounding and inventory search of his vehicle was unreasonable because

neither aided in public safety and protection; and (2) the search of the second SD card was unreasonable because the search warrant covered only one SD card.

{¶10} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶11} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). "'Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly

provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.'" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 51, quoting *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9, citing *Mapp* at 649 and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

**{¶12}** "At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, and that it meets Fourth Amendment standards of reasonableness." *Steinbrunner* at ¶ 12, citing *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), at paragraph two of the syllabus, *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and *Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999).

**{¶13}** First, Workman argues that the warrantless impounding and the inventory search of his vehicle were unreasonable because no exception to the warrant requirement applied—that is, Workman argues that his vehicle was unlawfully impounded because the "community-caretaking" exception did not apply. (Appellant's Brief at 8, citing *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, ¶ 10-16).

{¶14} The United States Supreme Court "recognized the inventory search exception to the warrant requirement of the Fourth Amendment in *S. Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092 (1976)." *State v. Wotring*, 11th Dist. Lake No. 2010-L-1009, 2010-Ohio-5797, ¶ 10. "The United States Supreme Court concluded that a routine inventory search of a lawfully impounded vehicle is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *Blue Ash* at ¶ 11, citing *Opperman* at syllabus. "The court held that '[i]n the interests of public safety and as part of what the Court has called "community caretaking functions," * * * automobiles are frequently taken into police custody. * * * The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.'" *Id.*, quoting *Opperman* at 368-369, quoting *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523 (1973).

{¶15} Therefore, "[t]o satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." *State v. Hathman*, 65 Ohio St.3d 403 (1992), paragraph one of the syllabus, citing *Opperman*, *Colorado v.*

*Bertine*, 479 U.S. 367, 107 S.Ct. 738 (1987), and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632 (1990). "The [United States] Supreme Court noted inventory procedures serve (1) to protect an owner's property while it is in the custody of the police, (2) to ensure against claims of lost, stolen, or vandalized property, and (3) to guard the police from danger." *State v. Peagler*, 76 Ohio St.3d 496, 501 (1996), citing *Bertine* at 741-742.

{¶16} "Although the inventory exception and impoundment of a vehicle are often intermingled, they involve different considerations." *Wotring* at ¶ 16. As such,

> we must first determine whether [Workman's] vehicle was lawfully impounded thereby setting the stage for the officers' subsequent inventory search, or whether the impoundment was merely a pretext for an evidentiary search of the impounded vehicle. If we determine that [Workman's] vehicle was lawfully impounded, we then determine whether the inventory search of the lawfully impounded vehicle was conducted in good faith and in accordance with reasonable standardized practices or routines.

*Id.* at ¶ 15. *See also Blue Ash* at ¶ 12.

{¶17} Workman heavily relies on *Blue Ash* to argue that "the established public-caretaking exceptions do not apply to the seizure of [his] vehicle."

(Appellant's Brief at 7). The Supreme Court of Ohio in *Blue Ash* looked only to whether law enforcement officers were authorized to use their discretion to impound Kavanagh's vehicle under the Revised Code and the Blue Ash Code of Ordinances.

{¶18} The Revised Code provides, in relevant part

(A) The sheriff of a county or chief of police * * * or a state highway patrol trooper * * * may order into storage any motor vehicle * * * that:

(1) Has come into possession of the sheriff, chief of police, or state highway patrol trooper as a result of the performance of the [officer's] duties; or

(2) Has been left on a public street or other property open to the public for purposes of vehicular travel[.]

R.C. 4513.61(A)(1), (2).

{¶19} Because Workman's vehicle was impounded in St. Marys, Ohio, we look to the St. Marys Codified Ordinances. St. Marys Codified Ordinance 303.08 provides, in relevant part:

(a) Police officers are authorized to provide for the removal of a vehicle under the following circumstances:

* * *

(5) When any vehicle has been used in or connected with the commission of a felony and is located upon either public or private property.

* * *

(7) When any vehicle is left unattended either on public or private property due to the removal of an * * * arrested operator[.]

St. Marys Codified Ordinances 303.08(a)(5), (7).

{¶20} In *Blue Ash*, the Supreme Court of Ohio concluded that because the Revised Code and the Blue Ash Code of Ordinances expressly authorized the law enforcement officer to use his discretion in impounding the vehicle, the impounding of the defendant's vehicle was lawful. *Blue Ash* at ¶ 16. Here, Investigator Kim Reiher ("Investigator Reiher") of the St. Marys Police Department testified at the July 29, 2014 suppression hearing that Workman's vehicle was impounded because law enforcement thought that it "may be considered evidence or involved in a crime or a felony" and because Workman was arrested. (July 29, 2014 Tr. at 41). However, on re-cross examination, Investigator Reiher testified that he could not answer questions regarding Workman's arrest because he was not the arresting officer. (*Id.* at 42). Because it was a joint investigation, Wapakoneta Police Department Detective Patrick Green ("Detective Green") also testified at the suppression hearing. (*Id.* at 55).

Detective Green testified that he arrested Workman on September 30, 2013 for a felony offense. (*Id.* at 61-62).

{¶21} The same provision of the Revised Code applies to Workman as applied to the defendant in *Blue Ash*, and St. Marys Codified Ordinance 303.08 similarly authorizes a law enforcement officer to use his or her discretion in impounding a vehicle—namely, law enforcement officers were authorized to impound Workman's vehicle because Workman was arrested and because law enforcement had reason to believe that it was used in connection with a felony. Under St. Marys Codified Ordinance 303.08, that Workman's vehicle was lawfully parked on private property at the time it was impounded is irrelevant.

{¶22} Nonetheless, Workman argues that impounding a vehicle that is legally and safely parked "violates the Fourth Amendment" and that "[i]f an impoundment is not supported by probable cause, it must be consistent with the community-caretaking role of the police and not in furtherance of a criminal investigation." (Appellant's Brief at 8, citing *Opperman*, 428 U.S. at 368-370, *Benavides v. State*, 600 S.W.2d 809, 812, and *Commonwealth v. Brinson*, 440 Mass. 609, 610). Workman appears to be challenging the constitutionality of St. Marys Codified Ordinance 303.08. Workman failed to challenge the constitutionality of St. Marys Codified Ordinance 303.08 at the trial-court level.

**{¶23}** "The Supreme Court of Ohio has held that, '"[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."'" *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 29, quoting *State v. Rice*, 3d Dist. Allen Nos. 1-02-15, 1-02-29, and 1-02-30, 2002-Ohio-3951, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "However, the waiver doctrine set forth by *Awan* is discretionary; thus, 'even where waiver is clear, a reviewing court may consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.'" *Id.*, quoting *Rice* at ¶ 7, citing *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. Nevertheless, "'"discretion will not ordinarily be exercised to review such claims, where the right sought to be vindicated was in existence prior to or at the time of trial."'" *Id.*, quoting *Rice* at ¶ 7, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170-71 (1988), quoting *State v. Woodards*, 6 Ohio St.2d 14, 21 (1966).

**{¶24}** The constitutional issue Workman raises on appeal was available to him at the trial-court level. Therefore, Workman waived the issue on appeal, and we decline to address it. *See Worting*, 2010-Ohio-5797, at ¶ 39 (declining to address the reasonableness of the police-department policy requiring law

enforcement to impound a vehicle). Instead, we conclude that R.C. 4513.61 and St. Marys Codified Ordinance 303.08 expressly authorized law enforcement to impound Workman's vehicle. *Accord State v. Robinson*, 2d Dist. Montgomery No. 23175, 2010-Ohio-4533, ¶ 53; *Worting* at ¶ 33.

**{¶25}** Next, we must determine whether the impoundment was merely a pretext for an evidentiary search of Workman's impounded vehicle. *Blue Ash*, 113 Ohio St.3d 67, 2007-Ohio-1103, at ¶ 17. To determine whether an impoundment is merely a pretext for an evidentiary search, the Supreme Court of Ohio in *Blue Ash*, relying on the United States Supreme Court's conclusion in *Bertine*, concluded that the impoundment was not merely a pretext for an evidentiary search of the impounded vehicle. *Id.* at ¶ 17-20. In upholding the search and seizure in *Bertine*, the United States Supreme Court reasoned that "there was no showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation." *Bertine*, 479 U.S. at 372.

**{¶26}** Here, there is no evidence that the impoundment of Workman's vehicle was merely a pretext for an evidentiary search. Instead, the testimony of the law enforcement officers indicates that Workman's vehicle was *not* being impounded as a fishing expedition for incriminating evidence. In fact, contrary to Workman's assertion that "[t]he materials gleaned from this search, along with the

seized cellular phone, were used as the basis for the later searches,"[1] the testimony of the law enforcement officers indicates that no information gathered from the impoundment and inventory search of Workman's vehicle was used to obtain a search warrant. (Appellant's Brief at 8).

{¶27} Investigator Reiher testified that Workman's vehicle was not searched until a search warrant was obtained. (July 29, 2014 Tr. at 20-21). According to Investigator Reiher, Workman's vehicle was impounded because law enforcement officers were seeking a search warrant to search the vehicle and it was impounded and inventoried in anticipation of receiving that warrant. (*Id.* at 41-42). Investigator Reiher further testified that the photos taken as inventory of Workman's vehicle were not used to obtain the search warrant. (*Id.* at 22). Detective Green also testified that Workman's vehicle was impounded in anticipation of receiving a search warrant. (*Id.* at 61). Aside from a photo of Workman's truck that he attached to his search-warrant affidavit for identification purposes, Detective Green testified that he did not use any information gathered from the inventory of Workman's vehicle to obtain the October 7, 2013 search warrant. (*Id.* at 71-72). (*See also* July 29, 2014 Tr., State's Ex. 37). Therefore, there is competent, credible evidence that the impoundment of Workman's vehicle

---

[1] Workman concedes in his motion to suppress, "Law enforcement conducted an inventory search of the Workman vehicle, which found no objects of evidential value." Workman further states in his motion to suppress, "It is apparent upon its face that the initial inventory search was fishing [sic] expedition by the State to attempt to locate incriminating evidence against Mr. Workman, even though the State was unable to do so when they searched the van." (Doc. No. 38).

was not a pretext for an evidentiary search. As such, the impoundment of Workman's vehicle was lawful.

{¶28} After concluding that the impoundment of Workman's vehicle was lawful, we next determine whether the inventory search was conducted in good faith and in accordance with reasonable standardized practices or routines. *Worting*, 2010-Ohio-5797, at ¶ 36. Investigator Reiher testified that the St. Marys Police Department has a standardized policy and procedure for inventorying vehicles that are impounded. (July 29, 2014 Tr. at 20). Specifically, Investigator Reiher testified that Workman's "vehicle was photographed in order to protect the interest of [Workman] to document all of the items that were present in the vehicle, and then it was secured in the building" in accordance with the St. Marys Police Department policies and procedures for inventorying impounded vehicles. (*Id.* at 21-22). (*See also* July 29, 2014 Tr., State's Exs. 1-35).[2] Furthermore, as

---

[2] Sergeant Shawn Vondrell ("Sergeant Vondrell") of the St. Marys Police Department inventoried Workman's vehicle on September 30, 2013. (July 29, 2014 Tr. at 14). Sergeant Vondrell was unavailable to testify at the July 29, 2014 suppression hearing. (*Id.*). Nonetheless, in support of his assignment of error challenging the trial court's denial of his motion to suppress, Workman cites Sergeant Vondrell's trial testimony. At the time the trial court ruled on Workman's motion to suppress, the trial court had before it only the evidence presented at the suppression hearing—namely, the testimony of Investigator Reiher. *Gartrell*, 2014-Ohio-5203, at ¶ 68, fn. 2, citing *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 18. "'[I]n reviewing a trial court's ruling on a motion to suppress, an appellate court may consider only evidence that was presented during the suppression hearing and may not consider evidence presented at trial.'" *Id.*, quoting *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 45 (10th Dist.). "As the Tenth District Court of Appeals observed in *Monford*, 'numerous Ohio appellate courts have * * * based their review only upon evidence presented at the suppression hearing.'" *Id.*, quoting *Monford* at ¶ 46, citing *State v. Wright*, 7th Dist. Mahoning No. 03 MA 112, 2004-Ohio-6802; *State v. Weese*, 9th Dist. Summit No. 20769, 2002-Ohio-3750; *State v. Tapke*, 1st Dist. Hamilton No. C-060494, 2007-Ohio-5124; *State v. VanNoy*, 188 Ohio App.3d 89, 2010-Ohio-2845, (2d Dist.). *See also Monford* at ¶ 46, citing *State v. Kinley*, 72 Ohio St.3d 491, 496 (1995), fn. 1. "Moreover, while the trial testimony may have become relevant had [Workman] renewed his motion to suppress following the relevant evidence at trial,

we highlighted above, Investigator Reiher and Detective Green testified that Workman's vehicle was not searched until a search warrant was secured and the information gathered as part of the inventory search was not used to obtain that warrant. The trial court was in the best position to evaluate the veracity of the law enforcement officer's testimony. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Thus, there is competent, credible evidence that the inventory search was conducted in good faith and in accordance with reasonable standardized practices or routines. Accordingly the trial court did not err in concluding that law enforcement officers lawfully impounded and inventoried Workman's vehicle.

{¶29} Workman also argues in this assignment of error that the photographs discovered on the second SD card should be suppressed because the search warrant did not cover two SD cards, only one. On October 18, 2013, law enforcement officers executing a search warrant discovered inside a "HVAC service parts box": (1) a black iPhone, (2) a plastic case with a 32 GB micro SanDisk SD card and a SanDisk adapter, and (3) 11 Trojan Magnum condoms. (July 29, 2014 Tr., State's Ex. 38). Also as part of that search, law enforcement officers discovered an "empty paper case for [a] SanDisk 32 GB micro card adapter." (*Id.*). That evidence was placed in "temporary evidence locker #5." (July 29, 2014 Tr., State's Ex. 39). To search the contents of the iPhone and the

---

[Workman] has not directed our attention to anywhere in the record where this was done, nor have we found any." *Gartrell* at ¶ 68, fn. 2, citing *Croom* at ¶ 18; *State v. Nixon*, 1st Dist. Hamilton No. C-020428, 2003-Ohio-3384, ¶ 15.

SD card, law enforcement officers sought, and were granted, another search warrant on October 22, 2013. (*Id.*). The October 22, 2013 search warrant described the property to be searched as a black iPhone and a micro SD card. (*Id.*).

{¶30} At the July 29, 2014 suppression hearing, the law enforcement officer that seized that evidence, Detective Green, the law enforcement officer that transported that evidence to the Northwest Ohio Technical Crimes Unit to be translated into readable form, Investigator Reiher, and the law enforcement officer that translated that evidence into readable form, Detective Scott Leland ("Detective Leland") of the Northwest Ohio Technical Crimes Unit, testified.

{¶31} First, Investigator Reiher testified that he transported the items in temporary evidence locker #5 to be searched to Detective Leland. (July 29, 2014 Tr. at 26). He testified that he was initially unaware that there was a second SD card in the adapter that he took to Detective Leland. (*Id.* at 27-28). However, after Detective Leland discovered the second SD card inside the adapter, Investigator Reiher testified that he thought that it could be searched. (*Id.*). On cross-examination, Investigator Reiher testified that he did not read the October 22, 2013 search warrant, but simply took the evidence "signed over" to him by Detective Green to the Northwest Ohio Technical Crimes Unit. (*Id.* at 35). He said, while the search warrant did not mention the adaptor, he took the adaptor to

the Northwest Ohio Technical Crimes Unit because it was in the bag that Detective Green provided to him. (*Id.* at 36). According to Investigator Reiher, he did not "realize that there may be a problem with the adapter" until after he reported the findings to Detective Green. (*Id.* at 38). Investigator Reiher testified that nothing of evidentiary value was discovered on the "visible" SD card, but images of the nude juveniles were discovered on a second SD card that was discovered inside the adapter, and additional images were discovered on the black iPhone. (*Id.* at 38-39). Investigator Reiher did not examine the contents of the bag that Detective Green entrusted with him to transport to the Northwest Ohio Technical Crimes Unit. (*Id.* at 40).

{¶32} Second, Detective Leland testified that he searched the SD cards that Investigator Reiher brought to the Northwest Ohio Technical Crimes Unit. (*Id.* at 44-45). Detective Leland testified that he did not read the October 22, 2013 search warrant. (*Id.* at 45). Instead, according to Detective Leland, he was under the understanding that he was to search SD cards and another law enforcement investigator was to search the iPhone. (*Id.*). Detective Leland identified State's Exhibit 34 as a photograph of "a single micro SD card as well as a micro SD card adapter that's used to plug the micro SD card into a full size SD slot" and on "closer examination, there is also a micro SD card in the adapter, so there is actually in this [photograph] two (2) micro SD cards" that were contained in a

plastic case that Investigator Reiher provided to him to convert into a readable format. (*Id.* at 47). Detective Leland testified that he discovered the second SD card when he took the visible SD card and the adapter out of the plastic case. (*Id.* at 47-48). According to Detective Leland, he was not surprised to find the second SD card inside the adapter. (*Id.* at 48).

{¶33} On redirect examination, Detective Leland further testified that he believed that he was searching both SD cards under the October 22, 2013 search warrant. (*Id.* at 54). According to Detective Leland, a SD-card adapter does not have the ability to store information. (*Id.* at 54).

{¶34} On re-cross examination, Detective Leland testified that he did not have the "occasion" to read the search warrant; rather he testified that the Northwest Ohio Technical Crimes Unit's procedure is to search whatever items are brought to the Northwest Ohio Technical Crimes Unit to be searched. (*Id.* at 54).

{¶35} Third, Detective Green testified that he conducted the search of the HVAC box, which produced the SD cards. (*Id.* at 69). He testified that he discovered the plastic case, which contained the SD cards, in the HVAC box and thought that the plastic case contained only one SD card just by looking at it, without removing its contents. (*Id.*). According to Detective Green, he would

have sought a search warrant to search the contents of the second SD card if he would have known it existed. (*Id.* at 70).

{¶36} On cross-examination, Detective Green testified that he did not include the adapter in his October 22, 2013 search-warrant affidavit because it did not have any evidentiary value. (*Id.* at 86). However, according to Detective Green, he sent the adapter with the iPhone and the visible SD card to the Northwest Ohio Technical Crimes Unit to be searched because he "didn't want to disturb evidence and remove an item * * * [he] kept it intact as [he] packaged it and sent it all up as one." (*Id.* at 87).

{¶37} On the court's examination, Detective Green testified that he wrote on the "Inventory of Property Take" form in State's Exhibit 38, "Plastic case with 32 GB Micro SanDisk SD card and SanDisk adapter." (*Id.* at 93-94); (State's Ex. 38). Detective Green testified that he authored the October 22, 2013 search-warrant affidavit and inventory-of-property-taken form and listed on the inventory-of-property-taken form, "iPhone and SanDisk 32 GB micro SD card." (July 29, 2014 Tr. at 95). (*See also* State's Ex. 39). He testified that he described in the search-warrant affidavit the SD card that was visible in the plastic case, but did not include the adapter in his search-warrant affidavit because he did not know that there was a second SD card inside of it. (July 29, 2014 Tr. at 95-96). According to Detective Green, he assumed there was only one SD card because he

did not open the plastic case it and the adapter were in to examine the adapter. (*Id.* at 96).

**{¶38}** Workman argues that the search of the second SD card was an unconstitutional warrantless search and that the evidence discovered on the second SD card should be suppressed—namely images that led to 66 of the 79 counts of which Workman was indicted. In support of his argument, Workman relies on *Riley v. California*, which requires law enforcement officers to "secure a warrant before searching data stored on digital devices." (Appellant's Brief at 10, citing ___ U.S. ___, 134 S.Ct. 2473, 2495 (2014)). While *Riley* requires law enforcement officers to seek a warrant to search data stored on digital devices, *Riley* was decided in the context of a search incident to a lawful arrest. *See Riley* at 2482 ("The two cases before us concern the reasonableness of a warrantless search incident to a lawful arrest."). A search incident to a lawful arrest is not the scenario presented by this case. Indeed, the United States Supreme Court went on to hold in *Riley* that "even though the search incident to arrest exception does not apply to cell phones, other case-specific exceptions may still justify a warrantless search of a particular phone." *Id.* at 2494.

**{¶39}** The search of the second SD card appears to fall outside of the scope of the October 22, 2013 search warrant because Detective Green testified that he did not include the second SD card in his search-warrant affidavit, and the search

warrant itself describes the black iPhone and the "visible" SD card. Therefore, we must determine if the search of the second SD card was reasonable in that it falls within a specific exception to the warrant requirement or if it is subject to the exclusionary rule. *See Riley* at 2482; *State v. Perkins*, 18 Ohio St.3d 193, 194 (1985).

**{¶40}** We hold that the inevitable discovery doctrine permits the evidence found on the second SD card to be introduced at trial because the second SD card would have been ultimately or inevitably discovered during the course of the lawful investigation. *See Perkins* at syllabus, citing *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501 (1984).

**{¶41}** Under the inevitable-discovery doctrine, "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *Id.* at 196. *See also State v. Rollins*, 3d Dist. Paulding No. 11-05-08, 2006-Ohio-1879, ¶ 39, fn. 3, citing *Perkins*. "The prosecution [has] the burden to show within a reasonable probability that police officials would have discovered the derivative evidence apart from the unlawful conduct." *Perkins* at 196. "The circumstances justifying application of this rule are most likely to be present if investigative procedures were already in place prior to the unlawful discovery of the evidence." *State v. Pearson*, 114 Ohio App.3d 153, 162 (3d

Dist.1996), citing *State v. Masten*, 3d Dist. Hancock No. 5-88-7, 1989 WL 111983, *8 (Sept. 29, 1989).

{¶42} The photos obtained from the search of the second SD card were admissible at trial because the State showed by a reasonable probability that those photos would have been discovered during the course of a lawful investigation. That law enforcement officers were following investigative procedures already in place when they discovered the photos on the second SD card is supported by competent, credible evidence.

{¶43} Detective Green testified that he lawfully seized the plastic case containing the SD cards and the adapter under the October 18, 2013 search warrant. However, Detective Green testified that he did not open the plastic case containing the visible SD card and the adapter when he discovered it. Rather, he testified that he visually inspected it before placing it into evidence and thought, based on that inspection, that there was only one SD card. He testified that he did not want to open the plastic case and remove the visible SD card to transport to Detective Leland at the Northwest Ohio Technical Crimes Unit because he did not want to disturb the evidence. Indeed, Detective Leland testified that any empty adapter cannot store any information, and Detective Green testified that he did not include the adapter in the October 22, 2013 search warrant because it did not have any evidentiary value.

{¶44} Most pertinent, Detective Green testified that he would have sought a warrant to search the second SD card had he known it existed, and there is no evidence that such warrant would not have been granted. That is, the affidavit for the October 22, 2013 search warrant demonstrated the probable cause to search the black iPhone and the visible SD card, which was based on law enforcement's reason to believe that Workman photographed nude juveniles. The same facts would have been used to establish the requisite probable cause to secure a search warrant to search the second SD card. Moreover, Detective Leland and Investigator Reiher testified that they believed that the search warrant covered searching both SD cards. Detective Leland's and Investigator Reiher's beliefs were reasonable considering the underlying purpose of the October 22, 2013 search warrant—that law enforcement officers articulated probable cause that Workman took photos of nude juveniles and those photos could be concealed in the electronic devices that were seized under the authorized searches of Workman's vehicle.

{¶45} This is not a case where law enforcement could have obtained a warrant, yet *chose* not to. *See State v. Alihassan*, 10th Dist. Franklin No. 11AP-578, 2012-Ohio-825, ¶ 30. "While the Exclusionary Rule is used to deny the admission of evidence unlawfully gained, and thereby to put the state in the same position it would have been absent the evidence seized, the rule should not be used

to put the state in a worse position by refusing evidence that would have been subsequently discovered by lawful means." *State v. Cundiff*, 10th Dist. Franklin No. 12AP-483, 2013-Ohio-1806, ¶ 22, quoting *Perkins*, 18 Ohio St.3d at 196. Applying the inevitable-discovery doctrine to this case prevents the State from being put in a worse position as a result of the wrongful search because the evidence would have been inevitably discovered by lawful means. *See id.*

{¶46} Therefore, there is competent, credible evidence that the State proved by a reasonable probability that the photos on the second SD card would have been inevitably discovered in the course of a lawful investigation. Thus, those photos are admissible under the inevitable-discovery doctrine.

{¶47} Accordingly, the trial court did not err in denying Workman's motion to suppress. For these reasons, Workman's first assignment of error is overruled.

### Assignment of Error No. II

**Mr. Workman's conviction for tampering with evidence, which was based on his discarding a hotel room key in a police station trash bin, was not supported by sufficient evidence. (February 5, 2015 Journal Entry on Sentence; T.T. at 413, 417, 419, 447, 778, 831, 960).**

{¶48} In his second assignment of error, Workman argues that his tampering-with-evidence conviction is based on insufficient evidence. In particular, he argues that "the State did not present enough evidence to prove beyond a reasonable doubt that Mr. Workman's placing a hotel room key into an

empty police-station trash bin was intended to deprive law enforcement of that key" and that the evidence does not support that he "knew or had reason to know that the key was relevant to an investigation that was in progress or was likely to be instituted." (Appellant's Brief at 11).

{¶49} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy

rather than credibility or weight of the evidence."), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶50} R.C. 2921.12 sets forth the offense of tampering with evidence and provides:

> (A)  No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1)  Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

R.C. 2921.12(A)(1).   To establish that Workman tampered with evidence, the State had to show

> "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation."

*State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

{¶51} "Knowledge that a criminal investigation is under way or is imminent is based upon a reasonable person standard."  *State v. Hicks*, 3d Dist.

Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶ 54, citing *State v. Mann*, 12th Dist. Clermont No. CA2006-05-035, 2007-Ohio-1555, ¶ 11. "The focus is on the intent of the defendant rather than the purpose of the criminal investigation." *Id.* at ¶ 54, citing *Mann* at ¶ 11.

{¶52} R.C. 2921.12(A)(1) has a 'purposely' culpability standard. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). *See also State v. Holtvogt*, 2d Dist. Montgomery No. 24748, 2012-Ohio-2233, ¶ 21. To determine whether a defendant acted purposely, his or her intent may be inferred from the surrounding facts and circumstances. *See State v. Elliot*, 3d Dist. Seneca No. 13-12-43, 2013-Ohio-2386, ¶ 27, citing *State v. Huffman*, 131 Ohio St. 27, 28 (1936).

{¶53} Therefore the relevant inquiries in this case are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any rational trier of fact could have found that: (1) a reasonable person in Workman's position would have known that an official investigation was in progress or was about to be or likely to be instituted; (2) Workman altered, destroyed, concealed, or removed the hotel-room keycard by throwing it away; and (3) Workman threw the hotel-

room keycard away with the specific intention of impairing its availability as potential evidence in the investigation. *See Straley* at ¶ 11; *Hicks* at ¶ 54.

**{¶54}** At trial, Detective Green testified that on September 30, 2013 he interviewed Workman at the St. Marys Police Department. (Sept. 29-Oct 3, 2014 Tr. at 786). Detective Green identified State's Exhibit 110, a video recording of his interview of Workman, which was subsequently played for the jury. (*Id.*). The video depicts Detective Green informing Workman that he is under arrest for pandering obscene material and reading Workman his *Miranda* warnings. (*See* State's Ex. 110). The video further depicts Detective Green, as Investigator Justin Chisholm ("Investigator Chisholm") looks on in the interview room, questioning Workman about the hotel room he rented in St. Marys and whether his purpose in renting the room was to take a video of juvenile girls for $250. (*Id.*). Specifically, Detective Green inquired whether Workman's cell phone will show that he was text messaging juvenile girls to meet at the hotel. (*Id.*). Detective Green also questions Workman in the video about nude photos he took of those juvenile girls earlier in the year at a hotel in Wapakoneta and whether he was planning to take future nude photos of those girls for $800. (*Id.*). Shortly after Detective Green and Investigator Chisolm ended Workman's interview and exited the interview room, Workman is depicted removing the hotel-room keycard from his pocket and placing it in the trash bin positioned next to him. (*Id.*).

**{¶55}** Also at trial, St. Marys Police Department Patrolman Lucas Turpin ("Patrolman Turpin") testified that on September 30, 2013, he assisted in arresting Workman, drove Workman to the St. Marys Police Department, and took Workman to the interview room. (Sept. 29-Oct. 3, 2014 Tr. at 400, 408). He testified that while he was not in the interview room, he observed Workman in the interview room from a television inside the police department. (*Id.* at 409). The portion of State's Exhibit 110 was played for the jury depicting Workman removing the hotel-room keycard from his pocket and placing it in a trash bin. (*See* State's Ex. 110). Patrolman Turpin testified that after he saw Workman put the hotel-room keycard in the trash bin, he entered the interview room and retrieved the hotel-room keycard from the trash bin. (Sept. 29-Oct. 3, 2014 Tr. at 413). According to Patrolman Turpin, there were no other items in the trash bin. (*Id.* at 413-414). Patrolman Turpin identified State's Exhibit 86A as the hotel-room keycard that he retrieved from the trash bin. (*Id.* at 414).

**{¶56}** Viewing the evidence in a light most favorable to the prosecution, we conclude that Workman's tampering-with-evidence conviction is supported by sufficient evidence. First, a rational trier of fact could have found that a reasonable person in Workman's position would have known that an investigation was in progress. To support a tampering charge, the evidence tampered with must have some relevance to an ongoing or likely investigation—namely, the evidence

must relate to the specific investigation, not any investigation. *Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, at ¶ 16. The video recording of Workman's interview clearly depicts Detective Green informing Workman that he was under arrest for pandering obscene material after taking nude photographs of juvenile girls earlier that year and questioning Workman regarding whether he rented the hotel room to video those juvenile girls. The hotel-room keycard related to law enforcement's ongoing investigation of Workman for illegally using minors in nudity-oriented material. Thus, Workman had actual knowledge that an investigation was in progress and that the hotel-room keycard related to that investigation when he placed it in the trash bin—that is, a reasonable person in Workman's position would know that a criminal investigation of him for illegally using minors in nudity-oriented material was underway at the time he disposed of the hotel-room keycard, and that the hotel-room keycard related to that investigation. R.C. 2921.12(A); R.C. 2901.22(B) ("A person has knowledge of circumstances when the person is aware that such circumstances probably exist."). *See also State v. Barker*, 11th Dist. Portage No. 2010-P-0044, 2012-Ohio-522, ¶ 58-61 (after Barker was arrested in connection with an assault, video evidence depicts him wiping blood off his shoe in the booking room after noticing the evidence).

{¶57} A rational trier of fact could have also found that Workman removed the hotel-room keycard from his person, and concealed it by putting it in a trash

bin, with the specific intention of impairing its availability as evidence in the investigation. Nevertheless, while Workman concedes that he placed the hotel-room keycard in the trash bin, he argues that the evidence presented at trial is insufficient to establish that he concealed or removed the hotel-room keycard because "[t]he act of putting the key in the empty trash bin is not an act of concealment." (Appellant's Brief at 12). In addition, Workman argues that the evidence presented at trial is insufficient to establish that he put the hotel-room keycard in the trash bin "to deprive law enforcement of the card and to hinder the investigation into his conduct." (*Id.*).

{¶58} For purposes of R.C. 2921.12(A)(1), "[a] defendant's act of removing contraband from his or her person can constitute concealment or removal if done to avoid discovery." *State v. Straley*, 2d Dist. Clark No. 2012-CA-34, 2013-Ohio-510, ¶ 9, citing *State v. Colquitt*, 2d Dist. Clark No. 98-CA-71, 1999 WL 812313, *5 (Sept. 24, 1999). The trier of fact could reasonably infer that placing the hotel-room keycard in a trash bin constituted concealment or removal. Black's Law Dictionary defines "concealment" as "[t]he act of preventing disclosure [or] [t]he act of removing from sight or notice; hiding." *Black's Law Dictionary* 349 (10th Ed.2014). And Merriam-Webster's Collegiate Dictionary defines "conceal" as "to prevent disclosure or recognition of" or "to place out of sight." *Merriam-Webster's Collegiate Dictionary* 257 (11th

Ed.2009). While "remove" is not defined by Black's Law Dictionary, it is defined by Merriam-Webster's Collegiate Dictionary, in relevant part, as "to get rid of." *Id.* at 1053. We hold that disposing of an item in a trash bin is an act of concealment or removal—that is, disposing of an item in a trash bin is to prevent disclosure or recognition of that item, to place that item out of sight, or to get rid of that item. *See State v. Cameron*, 11th Dist. Lake No. 207-L-004, 2007-Ohio-6935, ¶ 42 ("Finally, the act of placing the knife in the dumpster was evidence of attempting to conceal the knife and eliminate its evidentiary value."); *State v. Formica*, 11th Dist. Lake No. 2000-L-094, 2001 WL 1560942, *2 ("It is not disputed that, by throwing the items in a dumpster, Formica attempted to destroy or conceal them.").

{¶59} Finally, disposing of an item in a trash bin demonstrates the requisite intent—"with purpose"—of impairing an item's availability as evidence in an investigation. *See State v. Watson*, 12th Dist. Warren No. CA2014-08-110, 2015-Ohio-2321, ¶ 27-28 ("A rational trier of fact could find that [Watson] disposed of his bloody clothes [by placing them in a trash bag at a gas station] to impair the investigation relevant to the violent attack on [the victim]."). The fact that Workman's concealment or removal of the hotel-room keycard was ultimately unsuccessful does not demonstrate a failure of proof on that element. *See Colquitt* at *5, citing *State v. Blanchard*, 2d Dist. Clark No. 95-CA-0032, 1996 WL

144199, *3 (Mar. 29, 1996); *State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 15 ("Moreover, a defendant's failure to pursue a more successful form of concealment has no effect on a sufficiency-of-the-evidence analysis."), citing *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 22. Instead, the trier of fact could reasonably infer that by placing an item in a trash bin, Workman specifically intended to impair its availability as potential evidence in the investigation. *Watson* at ¶ 28; *Colquitt* at *5; *Jackson* at ¶ 17.

**{¶60}** After viewing the evidence in a light most favorable to the prosecution, a review of the record shows that a rational trier of fact could conclude beyond a reasonable doubt that the State proved the elements of the tampering-with-evidence offense under R.C. 2921(A)(1). Therefore, Workman's tampering-with-evidence conviction is supported by sufficient evidence.

**{¶61}** The State also proposes that there was sufficient evidence to convict Workman of tampering with evidence based on an alternative theory—that is, that he "tore up the receipt to his hotel room." (Appellee's Brief at 14). Workman does not argue that theory, and we need not address it since we conclude that there is sufficient evidence to support Workman's tampering-with-evidence conviction for disposing of the hotel-room keycard in the trash bin.

**{¶62}** Workman's second assignment of error is overruled.

{¶63} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**