[Cite as *State v. Navarro*, 2016-Ohio-749.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-15-28

      v.

BRANDON L. NAVARRO,            O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 14-CR-0049

**Judgment Affirmed**

Date of Decision:  February 29, 2016

APPEARANCES:

    *John M. Kahler, II*  **for Appellant**

    *Brian O. Boos*  **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Brandon Navarro, appeals the judgment of the Court of Common Pleas of Seneca County denying his motion to suppress evidence seized during the execution of three search warrants. On appeal, Navarro argues that his Fourth Amendment rights were violated insofar as the first and second search warrants (1) were not supported by probable cause and (2) failed to state with particularity the items to be seized. For the reasons that follow, we affirm the judgment of the trial court.

{¶2} On February 20, 2014, a Seneca County Grand Jury indicted Navarro on one count of illegal cultivation of marihuana, with an attendant forfeiture specification, in violation of R.C. 2925.04(A), a felony of the third degree; one count of trafficking in marihuana, with an attendant forfeiture specification, in violation of R.C. 2925.03(A)(2), a felony of the fourth degree; and one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree. The indictment arose after authorities uncovered a marihuana grow operation inside Navarro's home in the summer of 2013[1]

{¶3} On April 20, 2015, Navarro filed a motion to suppress the evidence underlying the indictment on the grounds that the affidavits in support of the search warrants did not establish probable cause to believe that marihuana-related

---

[1] The record is unclear as to Navarro's whereabouts between the summer of 2013 and February 2014.

activity was occurring in the residence located at 129 Hale Drive ("the Residence").[2]

**{¶4}** On May 11, 2015, the State filed its response arguing that the search warrants' affidavits established probable cause. The State added that it did not intend to introduce evidence obtained in connection with the third search warrant against Navarro because the item searched, a cell phone, belonged to a co-defendant, Ryan Steward, and was only indicative of Steward's drug-related activity. To that end, the State argued that Navarro lacked standing to challenge the third search warrant.

**{¶5}** On June 16, 2015, Navarro filed a supplement to his motion to suppress, and that same day, a hearing was held. No testimony was presented, but the parties offered a copy of the three search warrants into evidence. The search warrants contained the following information:

**{¶6}** On July 9, 2013, Detective Gabriel Wedge of the Seneca County Drug Task Force appeared before a Tiffin-Fostoria Municipal Court judge and obtained a warrant for the use of a thermal imaging scanner at the Residence.

**{¶7}** In support of the warrant application, Detective Wedge provided a sworn affidavit containing the following information, in relevant part:

---

[2] The record is unclear as to Navarro's whereabouts between February 2014 and January 2015. However, in January 2015, the record indicates that the trial court received notification that Navarro had been recently incarcerated at the Noble Correctional Institution on unrelated charges. Upon Navarro's incarceration, proceedings in the instant case resumed.

1. During my employment with the Fostoria Police Department, and as an agent with the Seneca County Drug Task Force – METRICH Enforcement Unit, I, along with other agents of the Seneca County Drug Task Force have received multiple complaints from citizen's[sic] reporting suspected drug related activity going on in specific areas and/or streets throughout the City of Fostoria, Seneca County, Ohio specifically [the Residence] and involving a subject named [Navarro]. These complaints continue and are ongoing at the present time.

2. On June 27, 2013, I received information from an anonymous person stating that [the Residence] was being used by [Navarro] to grow marijuana/cannabis. The anonymous person stated that the basement was full of marijuana/cannabis plants. The anonymous called[sic] stated the residence has a white truck and a black car in the driveway.

* * *

5. In conducting surveillance at [the Residence], I have found that [the Residence] a brick two story, single unit dwelling, tan in color, with a covered porch on the north side of the residence bearing the black numerals "129" on the white porch over hang, with a detached, green in color garage. The residence is across from rail road tracks near the Rail Bar. I also observed in front of the residence a black Pontiac 4 door with Ohio registration DSX 1640 and a white truck in the driveway; however, the registration was not visible. All of my observations are consistent with the information received through the anonymous complaint in relation to [Navarro] and the residence.

* * *

8. On June 27, 2013, by way of the rail road tracks, I attempted to get close to [the Residence] to attempt to see the license plate of the white truck; however due to darkness and lack of lighting in the area of the residence, I was unable to do so.

9. While attempting to obtain the white truck's registration, as said above, the wind was blowing from the south/south west, from the direction of the house into my face. I was then able to, based on

-4-

my training and experience as a police officer with the Fostoria Police Department and as a detective with the Seneca County Drug Task Force, METRICH Enforcement Unit, smell the distinct odor of fresh (unburnt) marijuana/cannabis.

10.   I also noted while doing surveillance of the residence, all the windows were covered or had the blinds pulled shut.  Due to the location of the residence and the way the street is setup, it is very hard to make visual observation of the property for any further evidence without getting on the subject's property.

June 16, 2015 Hrg., Court's Ex. 1, p. 3-5.

**{¶8}** The search warrant was executed later that day, and the results revealed abnormal heat and surface temperatures emanating from the Residence.

**{¶9}** Based on this information, on July 11, 2013, Detective Wedge appeared before a Tiffin-Fostoria Municipal Court judge and obtained a warrant to search the Residence for evidence relating to the cultivation and possession of marihuana.  The search warrant identified the following items to be seized:

Any illegally possessed drugs or controlled substances, firearms, weapons, drug paraphernalia, photos depicting drug use or trafficking, money, money obtained by drug sales, records of drug sales, items used to prepare drugs for sale or shipment, containers, sales, lock boxes used to store drugs, documents to indicate possession or control of premises.  Any computers, computer discs, televisions, DVD's, DVD players, digital cameras, cell phones and any other electronic equipment with purpose to store data.  Any other items or instrumentalities used to facilitate the cultivation of mari[h]uana, drug use, drug trafficking, or the crime under investigation.

June 16, 2015 Hrg., Court's Ex. 2, p. 1.

{¶10} In support of the warrant application, Detective Wedge provided a sworn affidavit containing the same information as the first warrant, with the following additions, in relevant part:

13. [On July 9, 2013], the Seneca County Drug Force–METRICH Enforcement Unit, along with the assistance from Officer Brandon Bell (a Certified Thermographer) of the Fostoria Police Department, utilized a Thermal Imaging Device on [the Residence]. Upon doing so, according to the Certified Thermographer, Officer Brandon Bell, [the Residence] was emitting from within the premises certain dissipating heat, surface temperature variable and thermal image information. The certain dissipating heat and surface temperature variables observed coming from the said residence is consistent with heat signatures involved in "indoor" marihuana[sic] growing operations and is coming from the basement area of the residence which is consistent with the anonymous complaint received.

14. While viewing the said abnormalities in the dissipating heat and surface temperature of the said residence, I noted that where these abnormalities were appearing through the thermal imager, there was an air conditioner (on and running) in a window along the same wall. Any reasonable person would believe and understand that in an area of a residence where an air conditioner is on and running, emitting cold air, there should be no abnormal heat signature, or at the very least should show less heat than areas of the home where there is no air conditioners present.

15. In accordance with the above said thermal imaging search warrant, certified thermographer, Officer Brandon Bell, viewed other residences to conduct thermal imaging scans of comparative structures for comparison purposes only. While doing the comparison scans, Officer Bell noted there to be a noticeable difference in surface temperature while comparing [the Residence] to the other residences used for comparison purposes. Being that [the Residence] was showing a greater amount of dissipating heat, surface temperature (brighter illumination) than the other residences which were consistently showing very little or none (no illumination).

\* \* \*

17.  On July 11, 2013 at approximately [8:55 am], I spoke with the landowner of [the Residence], Michael Hammer.  Mr. Hammer advised the tenant at [the Residence] is [Navarro].  Mr. Hammer advised [Navarro] is the only subject on the lease agreement.

June 16, 2015 Hrg., Court's Ex. 2, p. 7-8.

{¶11} The warrant was executed later that day, and a marihuana grow operation was uncovered.

{¶12} On July 17, 2013, Detective Wedge applied for a third warrant to search a cell phone seized during the search of the Residence.  The warrant was issued and executed later that day, and the search revealed communications indicative of Steward's marihuana-related activity.

{¶13} By entry dated June 22, 2015, the trial court denied Navarro's motion to suppress finding that probable cause existed to support the first search warrant, and therefore, the subsequent warrants were supported by probable cause.  In doing so, the trial court noted that

[a]lthough the Ohio Supreme Court has ruled that the odor of contraband if it is able to be identified by a qualified individual, is enough by itself to establish probable cause, this [c]ourt does not need to rely simply upon the identification by Detective Wedge, who is qualified to detect such an odor, the affidavit also includes numerous general complaints about drug activity at the residence, as well as a specific anonymous tip about marijuana being grown at the residence.  That tip was further corroborated by Detective Wedge when he noted that the windows of the residence were covered or otherwise barred, and by the odor of marijuana he detected.

(Docket No. 25, p. 4.)

{¶14} On July 14, 2015, Navarro entered a plea of no contest to the indictment, and the trial court entered a finding of guilt. Navarro was sentenced to two years in prison, consecutive to Navarro's earlier, unrelated sentence out of Wood County.

{¶15} It is from this judgment that Navarro appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION TO SUPPRESS EVIDENCE FOUND IN THE SEARCHES OF THE RESIDENCE BECAUSE THE AFFIDAVITS DID NOT CONTAIN INFORMATION SUFFICIENT TO ESTABLISH PROBABLE CAUSE FOR ISSUANCE OF THE SEARCH WARRANT.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED WHEN IT OVERRULED THE MOTION TO SUPPRESS EVIDENCE FOUND IN THE SEARCHES OF THE RESIDENCE BECAUSE THE SEARCH WARRANTS' DESCRIPTION OF ITEMS TO BE SEIZED WAS INSUFFICIENT.**

### Assignment of Error No. I

{¶16} In his first assignment of error, Navarro argues that the trial court erred in denying his motion to suppress evidence seized in connection with the execution of the first two search warrants. Specifically, Navarro claims that the

affidavit in support of the first search warrant did not establish probable cause to believe that marihuana-related activity was occurring in the Residence, and therefore, both the first and second search warrants are invalid. We disagree.

{¶17} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

{¶18} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article I, Section 14 of the Ohio Constitution contains a similar provision.

{¶19} Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence. *State v. Young,* 146 Ohio App.3d 245, 254 (11th Dist.2001), citing *State v. George,* 45 Ohio St.3d 325, 329 (1989). Probable cause only requires the existence of circumstances that warrant suspicion; thus, "the standard for probable cause requires *only* a showing that a probability of criminal activity exists, *not* a prima facie showing of criminal activity." (Emphasis sic.) *Young* at 254, citing *George* at 329.

{¶20} When evaluating an affidavit for the sufficiency of probable cause, the issuing magistrate must apply a totality-of-the-circumstances test. *George* at paragraph one of the syllabus, citing *Illinois v. Gates,* 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). On review, neither the trial court nor an appellate court should substitute its judgment for that of the magistrate. *George* at paragraph two of the syllabus, citing *Gates.* Rather, a reviewing court should "accord great deference to the magistrate's determination of probable cause" and focus its inquiry on whether the magistrate had "a substantial basis for concluding that probable cause existed." *Id.* "[D]oubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶21} An anonymous tip can establish probable cause, depending on the totality of the circumstances. *Gates* at 241–44. Under the totality of the

circumstances analysis, the degree to which the anonymous tip was corroborated or supplemented by independent police investigation is of "significant value." *Id*. at paragraph four of the syllabus.

**{¶22}** Here, the relevant inquiry is whether Detective Wedge's affidavit in support of the *first* search warrant application established a substantial basis to conclude that there was probable cause to believe that marihuana-related activity was occurring in the Residence. *See State v. Leibold*, 2d Dist. Montgomery No. 25124, 2013-Ohio-1371, ¶ 31 (A probable cause inquiry is generally confined to the four corners of the affidavit.). Given the nexus between the first and second search warrant, if the first search warrant was supported by probable cause, it logically follows that the second search warrant was supported by probable cause.

**{¶23}** In the first affidavit, Detective Wedge stated that he received an anonymous tip that the Residence was being used by Navarro to grow marihuana and that the Residence had a white truck and black car in the driveway. This was not the first time Detective Wedge had received reports of illegal activity at the Residence.

**{¶24}** Standing alone, the anonymous tip did not provide an adequate basis for a probable cause determination. The anonymous tip provided virtually nothing from which one might conclude that the anonymous informant was "either honest or his information reliable"; likewise, the anonymous tip gave no indication of the

basis for the anonymous informant's claim regarding Navarro's marihuana grow operation. *Gates*, 462 U.S. at 227.

**{¶25}** After receiving the anonymous tip, Detective Wedge visited the Residence where he observed two vehicles in the driveway: a white truck and a black sedan. He further noted that all the windows were covered or had the blinds pulled shut. At that point, something more was still required to establish probable cause to believe that marihuana-related activity was occurring in the Residence; the fact that the anonymous informant described the vehicles in the driveway gave no indication of the basis for the anonymous informant's claim regarding Navarro's marihuana grow operation.

**{¶26}** However, Detective Wedge stated that while attempting to obtain the white truck's registration "by way of the rail road [sic] tracks," the wind blew from the direction of the Residence, and as a result, he smelled the distinct odor of fresh, unburnt marihuana. June 16, 2015 Hrg., Court's Ex. 1, p. 4. He added that he was familiar with the smell of fresh, unburnt marihuana based on his education and experience. The Ohio Supreme Court has found that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." *State v. Moore*, 90 Ohio St.3d 47 (2000), paragraph one of the syllabus. *Moore* makes no clear distinction between the smell of burnt marihuana and the smell of fresh marihuana.

{¶27} At the suppression hearing, Navarro offered nothing to rebut Detective Wedge's claim that he was able to smell the distinct odor of fresh, unburnt marihuana in the air. For example, Navarro did not question Detective Wedge about his experience in detecting the odor of fresh, unburnt marihuana; Navarro did not question Detective Wedge on the distance between Detective Wedge and the Residence at the time he claimed to smell the odor of fresh, unburnt marihuana; and Navarro did not question Detective Wedge on other possible sources of the odor of fresh, unburnt marihuana.

{¶28} Therefore, pursuant to *Moore*, we find that Detective Wedge's affidavit established a substantial basis for concluding that probable cause existed to believe that marihuana-related activity was occurring in the Residence. In addition, the trial court noted the windows were covered or had the blinds pulled shut consistent with the officer's experience in other cases of marijuana cultivation.

{¶29} Accordingly, we overrule Navarro's first assignment of error.

*Assignment of Error No. II*

{¶30} In his second assignment of error, Navarro argues that the second search warrant did not describe with particularity the items to be seized. Specifically, Navarro claims that the second search warrant was overly broad

insofar as it provided for the seizure of items related to all drug-related activity, as opposed to the seizure of items related to the cultivation and sale of marihuana.

{¶31} Crim.R. 47 provides, in relevant part:

An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. *It shall state with particularity the grounds upon which it is made* and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.

(Emphasis added.).

{¶32} "[Crim.R. 47], * * * when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the specific legal and factual grounds upon which the validity of the search and seizure is challenged." *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 219 (1988). "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits." *Id.* at 218. "Failure on the part of the defendant to adequately raise the basis of his challenge constitutes waiver of that issue on appeal." *Id; see also State v. Wangler*, 3d Dist. Allen No. 1-11-18, 2012-Ohio-4878, ¶ 25.

{¶33} In reviewing the record, it is clear that the issue of particularity was never raised before the trial court. Navarro's motion to suppress and his

supplemental memorandum focused primarily on the issue of the "plain smell doctrine" and whether it applied to the odor of fresh, unburnt marihuana. Likewise, Navarro never mentioned the warrants' lack of particularity at the suppression hearing.  Thus, Navarro's argument is waived on appeal.

**{¶34}** Accordingly, we overrule Navarro's second assignment of error.

**{¶35}** Having found no error prejudicial to Navarro, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**