[Cite as *State v. Owens*, 2017-Ohio-2590.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 9-16-40

      v.

TOMMY OWENS,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 16-CR-0085

**Judgment Affirmed**

**Date of Decision:  May 1, 2017**

APPEARANCES:

    *Robert C. Nemo* for Appellant

    *Kevin P. Collins* for Appellee

**ZIMMERMAN, J.**

{**¶1**} Defendant-Appellant Tommy Owens appeals his July 15, 2016 convictions of two counts of possession of cocaine and two counts of trafficking in cocaine from the Marion County Court of Common Pleas. Defendant-Appellant alleges the trial court erred in denying his motion to suppress, erred in admitting evidence at trial, erred in denying a motion for a mistrial, and erred in denying his Rule 29 motion. For the reasons that follow, we affirm the judgment of the trial court.

*Facts and Statement of the Case*

{**¶2**} On January 7, 2016 the MARMET Drug Task Force ("MARMET") arranged and completed a "controlled buy" of drugs between Stacy Keese ("Keese"), a confidential informant, and Defendant-Appellant Tommy Owens ("Owens") at 224 North Grand Avenue, in Marion, Ohio. MARMET supplied the money for the transaction. In addition to supplying the money for the drug buy, MARMET agents equipped Keese with an audiovisual wire to record his transaction with Owens.

{**¶3**} On February 9, 2016, MARMET conducted another controlled buy of drugs between Keese and Owens at the same location. Equipped with money and an audiovisual wire, Keese again purchased cocaine from Owens under MARMET supervision. As a result of this transaction, MARMET obtained a search warrant

on February 9, 2016 to search Owens' residence, located at 618 Henry Street in Marion, Ohio, as well as the 224 North Grand location.

{¶4} The search warrant of the 618 Henry St. location produced a small amount of cocaine. No one was present at the Henry Street address when the search was conducted, however, Owens later admitted that the cocaine obtained as a result of the Henry Street address search was his.

{¶5} The search of the 224 North Grand location resulted in seizure of a larger amount of cocaine; approximately 80 grams of cocaine was located inside a peanut can found in the kitchen portion of the address.

{¶6} Owens and seven other individuals were present in the Grand Avenue address when the search warrant was executed. MARMET agents observed Owens as the first individual to run towards the back of the residence, where the kitchen was located, when police announced their presence. Ultimately, Owens admitted to a Marion City Police Officer that the peanut can located in the kitchen containing cocaine was his. However, Owens later retracted this admission.

*Procedural History*

{¶7} On February 25, 2016, Owens was indicted by the Marion County, Ohio grand jury on two counts: Count One, Possession of Heroin, a felony of the fifth degree, in violation of R.C. 2925.11(A)/(C)(4) [sic], and Count Two, Possession of Cocaine, a felony of the first degree, in violation of R.C.

2925.11(A)/(C)(4). Both counts contained a forfeiture specification pursuant to R.C. 2941.1417. On April 21, 2016, the grand jury amended Count One of the indictment to Possession of Cocaine, a felony of the first degree, under the same statute for which Owens was previously indicted.

{¶8} Owens subsequently filed a Motion to Suppress the evidence obtained from the two searches relating to drugs that were found and determined to belong to Owens. However, on June 2, 2016, the Marion County, Ohio grand jury, in a superseding indictment, charged Owens with four new counts related to the two controlled buys of drugs and subsequent search warrants. The four counts were: Count One, Possession of Cocaine, a felony of the fifth degree, in violation of R.C. 2925.11(A)/(C)(4); Count Two, Possession of Cocaine, a felony of the first degree, in violation of R.C. 2925.11(A)/(C)(4); Count Three, Trafficking in Cocaine, a felony of the fifth degree, in violation of R.C. 2925.03(A)/(C)(4); and Count Four, Trafficking in Cocaine, a felony of the fifth degree, in violation of R.C. 2925.03(A)/(C)(4). Counts one and two of the indictment again contained forfeiture specifications.

{¶9} On June 10, 2016, the trial court heard Owens' Motion to Suppress, and by its entry of June 14, 2016, the trial court denied the same.

{¶10} The matter proceeded to a jury trial on July 13, 2016. After three days of testimony, the jury found Owens guilty on all four counts. At trial, the State

dismissed the specifications as to counts one and two. Ultimately, Owens was sentenced to six months on Count One; a mandatory term of five years on Count Two; nine months on Count Three; and nine months on Count Four. The trial court ordered that the sentences be served concurrently. Thus, Owens received a total sentence of five years in prison.

{¶11} Owens timely appealed, and presents the following four assignments of error for our review:

### ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS AND DISMISS.**

### ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE VIDEO AND AUDIO RECORDINGS BETWEEN APPELLANT AND THE CONFIDENTIAL INFORMANT, WHO DID NOT TESTIFY AT TRIAL.**

### ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN FAILING TO EITHER DISMISS THE CASE OR GRANT A MISTRIAL DUE TO A CONSISTENT PATTERN OF FAILURE TO TIMELY PROVIDE DISCOVERY.**

### ASSIGNMENT OF ERROR NO. 4

**AS A RESULT OF THE FAILURE OF APPELLEE TO SHOW THAT THE AMOUNT OF COCAINE ALLEGEDLY ASSOCIATED WITH APPELLANT EXCEEDED 27 GRAMS, THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S RULE 29 MOTION.**

*First Assignment of Error*

**{¶12}** On appeal, Owens challenges the trial court's denial of his motion to suppress. Specifically, Owens argues that MARMET agents lacked probable cause to obtain the search warrants for the 618 Henry Street and 224 North Grand Avenue locations and that the affidavits submitted lacked a substantial basis to support a finding of probable cause.

*Standard of Review*

**{¶13}** "'Appellate review of a decision on a motion to suppress presents a mixed question of law and fact.'" *State v. Navarro,* 3rd Dist. Seneca No. 13-15-28, 2016-Ohio-749, ¶ 17, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court assumes the role of trier of fact at the suppression hearing, and as the trier of fact, is in the best position to evaluate the evidence and the credibility of witnesses. *State v. Workman,* 2015-Ohio-5049, 52 N.E.3d 286, ¶ 10 (3rd Dist.). Deference is given to the trial court's findings of facts so long as they are supported by competent, credible evidence. *Id.* The trial court's conclusions of law, however, are reviewed using a *de novo* standard; as such, we must decide whether the facts satisfy the applicable legal standard. *Id.*

*Analysis*

**{¶14}** "The Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and

seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant." *Id.,* at ¶ 11, citing *State v. Steinbrunner,* 3rd Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12 citing *Mapp v. Ohio,* 367 U.S. 643, 649, 81 S.Ct. 1684 (1961). The Fourth Amendment also declares that warrants shall not be issued, unless there is probable cause, which is supported by oath or affirmation; and the warrant states with particularity the place to be searched or persons or things to be seized. *State v. Bangera,* 2016-Ohio-4596, 70 N.E.3d 75, ¶ 31 (11th Dist.) quoting *Marron v. United States,* 275 U.S. 192, 195, 48 S.Ct. 74 (1927).

{¶15} In order to obtain a search warrant, the requesting party must present information containing sufficient facts to permit a judge to reach a conclusion that evidence of a crime exists in the place to be searched; the judge or magistrate is not to serve merely as a rubber stamp for law enforcement. *See State v. Hoffman,* 2013-Ohio-1082, 989 N.E.2d 156, ¶ 12 (6th Dist.) citing *United States. v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741 (1965). As stated by the United States Supreme Court in *Illinois v. Gates*:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for…conclud[ing]" that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317 (1983) quoting *Jones v. U.S.,* 362 U.S. 257, 271, 80 S.Ct. 725 (1960), *overruled in part on other grounds.*

**{¶16}** If the reviewing court determines that the warrant should not have been issued, because no substantial basis for concluding that probable cause existed, it must then go on to determine whether a good-faith exception applies, which presents a question of law subject to a *de novo* review. *State v. Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 32.

**{¶17}** In reviewing the materials submitted to us, we note some missteps are present in the affidavits submitted to the judge in support of the search warrant requests. In terms of mere mechanics, two search warrants were issued for each residence and each search warrant was supported by a different affidavit. (Doc. 29, Ex. A-D). In both instances, the second affidavit for each location failed to match the first affidavit. Additionally, the facts supporting the officer's belief that probable cause existed were numbered incorrectly. In its entry denying the motion to suppress, the trial court noted that "[a]ll of the affidavits are poorly drafted and contain a number of ambiguities." (Doc. 67 at 5).

**{¶18}** Regarding the evidence presented to the judge to form the requisite probable cause necessary for the issuance of a search warrant, we note the affidavits do not contain operative facts, as opposed to the officer's conclusion, to support probable cause. The Ohio Supreme Court specifically stated the necessity of

including in a supporting affidavit underlying facts to support probable cause, warning that "a magistrate cannot be viewed as neutral and detached if the magistrate issues a search warrant that is unknowingly based on the police officer's conclusions." *Castagnola* at ¶ 41.

{¶19} Illustrative of the problem with the conclusions present in the affidavits is the following excerpt:

> "3. * * * The video was reviewed from the buy and it is Tommy Owens in the video."

(Doc. 29, Ex. B). As the trial court indicated, "this statement contains no factual information on who reviewed the video, when the video was reviewed, whether the reviewing person had any familiarity with Owens, and how it was determined that Tommy Owens was, in fact, the person in the video." (Doc. 67). However, after extensively analyzing the multiple errors and deficiencies present in the affidavits, the trial court summarily stated that "while the substantive factual information in the affidavits is minimal, the Court does find that the affidavits contain sufficient factual information which could give a neutral magistrate a substantial basis to conclude that probable cause existed." (*Id.*).

{¶20} In our review of the affidavits it is difficult for us to determine that a substantial basis to support a finding of probable cause exists given the nature of the facts and opinions of the MARMET agent in the affidavits. It is even more difficult to give deference to the trial court's ruling on the motion to suppress, when the

majority of its judgment entry criticizes the multiple errors in the affidavits, acknowledging that such information required the issuing judge to make a number of inferences which were not clearly spelled out. (*Id.*). As such, the facts herein do not support a substantial basis of probable cause for the issuance of the warrants. Thus, we must determine whether or not the good faith exception applies under the facts of this case.

*Good Faith Exception*

{¶21} In *State v. George,* the Ohio Supreme Court stated that Fourth Amendment exclusionary rule would not be applied to bar evidence obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate, even though the warrant was ultimately found to be unsupported by probable cause. *State v. George,* 45 Ohio St.3d 325, 330, 544 N.E.2d 640 (1989). *See also United States v. Leon,* 468 U.S. 897, 913, 104 S.Ct. 3405 (1984). Where an officer acts with objective good faith, and obtained a search warrant from a judge or magistrate and acted within its scope, there is no illegality and nothing to deter. *Id.* at 331, quoting *Leon, supra,* at 920.

{¶22} Our review of the affidavits, as well as the judgment entry issued by the trial court demonstrates no evidence of any "bad faith" actions by law enforcement. While the affidavits contained, in large part, conclusory statements of law enforcement, there is nothing in the record indicating that such statements were

false or made to mislead the magistrate. Consistent with *George,* there is nothing in the record to indicate that the magistrate or judge was misled by information in an affidavit that the affiant knew was false; nothing to indicate that the issuing magistrate wholly abandoned his judicial role; nothing to indicate that an officer relied on a warrant based on an affidavit lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and lastly, nothing to indicate that in this particular case a warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. *Id.* at 331. Given that the officers acted in good faith and in an objectively reasonable manner, we determine that even though there was not probable cause to support the issuance of the search warrants, the good faith exception allows the evidence recovered at the two locations to be used by the prosecution in their prosecution of Owens. The first assignment of error is accordingly overruled.

<u>*Second Assignment of Error*</u>

**{¶23}** In his second assignment of error, Owens contends that the trial court erred in admitting into evidence video and audio recordings between him and the confidential informant, because the informant did not testify at trial. During its' case in chief, the State played the video of the January 7th, 2016 controlled buy between Keese and Owens, and the video from February 9, 2016 controlled buy between the two. Keese was not subpoenaed by the State and did not testify as to

the statements or actions depicted in the video. Thus, Owens contends that the introduction of Keese's statements in the video violated his Sixth Amendment right to confrontation, and requests that this court overturn his convictions in Counts III and IV.

{¶24} Owen's assertion of a Sixth Amendment Confrontation Clause violation is without merit under the circumstances of this case. A review of the trial transcript reveals that Owens admitted that he was in possession of the cocaine as alleged in Count I of his indictment; that he trafficked in cocaine on January 7th, 2016 as alleged in Count III of his indictment; and that he trafficked in cocaine on February 9, 2016 as alleged in Count IV of his indictment. (07/15/2016 Tr. at pp. 777-80). Further, Owens' attorney confirmed these admissions in his closing statement, requesting the jury to "find him guilty of [those counts]." (*Id.* at pp 848-49). Thus, competent and credible evidence exists as to Counts I, III, and IV, upon which the jury relied, to support its verdict. Any error that may have been present in admitting the videos into evidence was harmless beyond a reasonable doubt, given Owens' under oath admissions of drug possession and trafficking. The second assignment of error is accordingly overruled.

### *Third Assignment of Error*

**{¶25}** In Owen's third assignment of error, Owens contends that the trial court erred in failing to either dismiss the case or grant a mistrial due to a consistent pattern of discovery violations by the State.

**{¶26}** The United States Supreme Court has held that "a criminal defendant may claim denial of due process where the state fails to disclose the existence of potentially exculpatory evidence." *State v. Iacona,* 93 Ohio St.3d 83, 88-89, 2001-Ohio-1292, 752 N.E.2d 937, citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194 (1963). Additionally, "'[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.'" *Id.* at 89, quoting *Brady, supra.*

> But, in determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense.

*Id.* quoting *State v. Johnson,* 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus.

**{¶27}** In addition to the *Brady* standard set forth by the United States Supreme Court, Crim.R. 16 governs the discovery process. Crim.R. 16(B)(5)

-13-

requires that a prosecuting attorney disclose "[a]ny evidence favorable to the defendant and material to guilt or punishment." *Id.* In regulating the discovery process, Crim.R. 16(L)(1) provides that "[t]he trial court may make orders regulating discovery not inconsistent with this rule. *Id.* "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply * * * the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence material not disclosed, or *it may make such other order as it deems just under the circumstances*." (Emphasis added.) *Id.* Applying Crim.R. 16 and the *Brady* requirements to the facts presented to us for review, we will discuss each alleged discovery violation in turn.

*Davon Meggison Criminal History*

{¶28} Owens contends that Davon Meggison's ("Meggison") criminal history was not properly disclosed. Specifically, Owens asserts that the prosecution failed to disclose that Meggison was arrested out of the same incident involving Owens; that Meggison had been arrested on a probation violation; and that Meggison was currently under indictment as well.

{¶29} Owens asserts that the failure to disclose the criminal history of Meggison materially affected his attorney's ability to adequately prepare and present a proper defense. However, this court has consistently determined that

-14-

materiality does not refer to the defendant's ability to prepare for trial. *State v. Wangler*, 3rd Dist. Allen No. 1-11-18, 2012-Ohio-4878, ¶ 115, quoting *United States v. Agurs*, 427 U.S. 97, 113, 96 S.Ct. 2392 (1976), holding modified by *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375 (1985). Moreover, Owens has put forth no assertion that the undisclosed evidence in regards to Meggison's criminal history was favorable to Owens' case, let alone material to Owens' conviction. Furthermore, Meggison's criminal history was discussed, in part, during his testimony. There is nothing in the record to indicate that Meggison's full criminal history, if disclosed, would have impacted the verdict in light of Owen's admissions of guilt to three of the four charges.

*Shaquille Smith Plea Deal*

{¶30} During the course of the trial, Owens' attorney discovered that Shaquille Smith ("Smith"), a witness for the State, had reached a plea deal with the State in exchange for his testimony against Owens. This information was revealed during the cross examination of Smith by Owens' attorney. Upon notice of this plea deal, the trial court recessed the jury and independently investigated the allegation. It was determined that Smith was charged with Permitting Drug Abuse, a felony of the fifth degree, in violation of R.C. 2925.13, arising from the February 9, 2016 incident involving Owens. The State advised the trial court it had a plea agreement with Smith, and that such agreement had not been disclosed to defense counsel. The

court inquired if a statement from Smith had been obtained in exchange for Smith's plea deal, to which the State answered affirmatively and that such statement was not disclosed to the defense. Outside the presence of the jury, the State indicated that there was a recorded interview of Smith and that the State had failed to provide said interview to Owens' counsel.

{¶31} As a result of these non-disclosures, the trial court recessed the jury and suspended Smith's cross-examination testimony in order to give Owens' counsel an opportunity to review the plea deal and statement. The trial court then permitted Owen's counsel to cross-examine Smith the next day on such plea deal and statement.

{¶32} With respect to the plea agreement reached with Smith and the statement that was given to the State prior to trial, there is again nothing in the record to indicate that these pieces of evidence were material to Owens' conviction. While the lack of disclosure may have effected defense counsel's ability to prepare for trial, preparation does not equal materiality. *Wangler, supra.*

{¶33} Further, with respect to the failure of the State to disclose its recorded statement of Smith under Crim.R. 16(L)(1), the trial court permitted Owens' attorney ample review of the tape prior to concluding cross examination which resulted in greater questioning of Smith. The trial court properly interceded and regulated the discovery process consistent with the rules of discovery, which

resulted in the impeachment of Smith. We find the trial court's curative measures were sufficient to resolve any potential prejudice to Owens.

*Confidential Informant Address*

**{¶34}** Lastly, Owens' contends that the State failed to comply with the rules of discovery by not disclosing the address of Keese, its confidential informant. During trial the trial court questioned counsel for the State concerning Keese's current address. The State advised the court of Keese's out-of-state location, and its decision not to call him as a witness to testify. The State also advised the trial judge that they had not given Owen's counsel Keese's current address, which had changed during the course of the proceedings. The trial court then inquired of the steps taken by the defense to subpoena Keese as a witness. The trial court noted that the defense could have filed a praecipe for a subpoena for Keese at his prior address, but failed to do so. However, consistent with the provision in Crim.R. 16(L)(1), the trial court agreed to continue the trial to permit counsel the opportunity to secure Keese's appearance in court to testify, which the defense rejected. Given that the trial court took steps to remedy the non-disclosure of Keese's new address, and Owens' counsel's rejection of the trial court's continuance offer, we reject Owens' contention that a mistrial or dismissal was the only appropriate remedy in this instance.

{¶35} While not condoning the multiple discovery errors committed by the State in this case, we find that there was no material discovery violation that would have changed the jury's verdict in light of Owens' admissions and the evidence presented at trial. Accordingly, we overrule the third assignment of error.

*Fourth Assignment of Error*

{¶36} In Owens' fourth assignment of error, Owens contends that the State failed to prove that 27 grams or more of cocaine was recovered at the 224 North Grand Avenue location as set forth in Count II of the superseding indictment. Relying on the rationale in *State v. Gonzales,* 6th Dist. Wood No. WD-13-086, 2015-Ohio-461, and the affirmance of the 6th District's legal interpretation by the Supreme Court in *State v. Gonzales,* — Ohio St.3d —, 2016-Ohio-8319, — N.E.3d — ("*Gonzales I*"), Owens asserts that the State was required to prove that the weight of the actual cocaine possessed by the defendant met the statutory threshold.

{¶37} It is not disputed that the Ohio Bureau of Criminal Investigation ("BCI") failed to test the weight of cocaine in the mixture received from the State relative to Count II. BCI only performed a visual inspection of that sample to assure that the substance was a homogenous mixture and then utilized a sample of that homogenous mixture to show that the mixture contained cocaine. (07/14/2016 Tr. at pp 556-58). Owens asserts that because the State failed to present evidence about

purity, or the amount of cocaine contained in the mixture, his felony of the first degree conviction for possession of cocaine (Count II) cannot stand. We disagree.

**{¶38}** The Supreme Court recently granted reconsideration of the *Gonzales* decision, and in its ruling issued on March 6, 2017, the Supreme Court held that the entire compound, mixture, preparation, or substance, is to be considered in determining the appropriate penalty. *State v. Gonzales,* — Ohio St.3d —, 2017-Ohio-777, — N.E.3d —. Because the State did prove that the entire mixture containing cocaine (in Count II) weighed over 27 grams but less than 100 grams Owens' conviction for possession of cocaine under the standard announced in *Gonzales II* is proper.

**{¶39}** Owens' additionally contends, in the alternative, that even if the trial court did not err in applying *Gonzales,* a Rule 29 acquittal was appropriate. Specifically, Owens' contends that the evidence was insufficient to demonstrate that Owens had constructive possession over the cocaine obtained at the 224 North Grand location. This argument is misplaced.

**{¶40}** Crim.R. 29(A) states, in part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. *State v. Hampton,* 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 13. An appellate court, when analyzing a denial of a Crim.R. 29

motion for acquittal, utilizes a sufficiency of the evidence standard of review, making the relevant inquiry "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Murphy,* 5th Dist. Stark No. 2015CA00024, 2015-Ohio-5180, ¶ 17, quoting *State v. Jenks,* 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492 (1991), *overruled in part on other grounds.*

**{¶41}** A review of the trial transcript demonstrates that a rational trier of fact could have found the essential elements of possession of cocaine, especially in light of the testimony of witnesses for the State. Multiple witnesses for the State testified that Owens admitted to possessing the cocaine that was recovered from the kitchen.[1] Coupled with Owens' admissions to the police, along with MARMET agents' testimony surrounding Owens' drug selling behavior on the date in question, when viewed in a light most favorable to the prosecution, a rational trier of fact could believe that Owens possessed the drugs obtained from the kitchen at the 224 North Grand Avenue location. Owen's fourth assignment of error is accordingly overruled.

---

[1] Officer Richard Wheeler and Detective Andy Isom testified that they heard Owens declare ownership of the drugs seized at the 224 North Grand Avenue location. According to these witnesses, Owens didn't want someone else to get in trouble for his drugs. Owens later recanted his confession and during his trial testified that he never stated that the drugs were his.

{¶42} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, P.J. concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**