[Cite as *State v. Yoder*, 2018-Ohio-3321.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 14-18-03

    v.

TREG R. YODER,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 2016 CR 0234

**Judgment Affirmed**

Date of Decision: August 20, 2018

APPEARANCES:

    *Jonathan T. Tyack* **for Appellant**

    *Rick Rodger* **for Appellee**

Case No. 14-18-03

**ZIMMERMAN, J.**

{¶1} Defendant-Appellant, Treg R. Yoder ("Appellant"), brings this appeal from the Union County Common Pleas Court, convicting him of one count of Gross Sexual Imposition and sentencing him to five years of Community Control. On appeal, Appellant asserts that: 1) the trial court's verdict was not sustained by sufficient evidence; 2) the trial court's verdict was against the manifest weight of the evidence; and 3) the trial court erred by relying on evidence related to a dismissed charge to convict Appellant of Count I. For the reasons that follow, we affirm the judgment of the Union County Common Pleas Court.

*Factual Background*

{¶2} In early August, 2016, Appellant was employed as a Resident Care Associate ("RCA") at Brookdale Senior Living ("Brookdale"). (Trial, 10/02/2018 Tr. at 25-26; 72). Brookdale is a skilled nursing facility located in Marysville, Ohio. (*Id.* at 5-6). While working as an RCA, Appellant was responsible for providing bathing, dressing, medication, and bathroom assistance to residents of Brookdale in accordance with the resident care plan. (*Id.* at 72).

{¶3} Appellant worked third shift (10:30 p.m. to 6:30 a.m.) on August 7th and 8th of 2016. (*Id.* at 25-26). Another RCA, Heather Bialecki ("Bialecki"), was assigned to work with Appellant on those dates. (*Id.* 25). The facts revealed that Appellant and Bialecki were attending to S.W., a resident at Brookdale who

-2-

suffered from Alzheimer's dementia. (*Id.* at 95; State's Ex. 1). S.W. was incontinent and dependent on RCAs for bathroom assistance. (*Id.* at 23).

{¶4} Appellant and Bialecki discovered that S.W. had urinated himself, so they started to change his Depends diaper. (*Id.* at 28). Bialecki went to the cabinet next to S.W.'s bed to obtain supplies while Appellant commenced changing S.W. (*Id.* at 23; 28). Bialecki gave Appellant medicated cream for S.W.'s bottom, then resumed obtaining supplies from the cabinet next to S.W.'s bed. (*Id.* at 28). At some point Bialecki turned back toward S.W., and observed Appellant "stroking" or "masturbating" S.W.'s penis, stating (that) S.W.'s "penis was the only penis he could play with." (*Id.* at 29). Appellant went on to tell Bialecki that when he had done this before, "he asked for more." (*Id.*). When Bialecki asked for clarification, Appellant said (that) S.W. "asked for more." (*Id.*). Bialecki testified that the "masturbation" of S.W. by the Appellant lasted for three to five minutes. (*Id.* at 30).

{¶5} Bialecki reported the incident (involving S.W.) to the Brookdale incident hotline number. (*Id.*). Shortly thereafter, Brookdale management fired Appellant and reported the incident to local law enforcement authorities. (*Id.* at 32; 78-79).

Case No. 14-18-03

**{¶6}** On November 22, 2016, Appellant was indicted by the Union County Grand Jury on two counts of Gross Sexual Imposition[1] ("GSI"), in violation of R.C. 2907.05(A)(5) and R.C. 2907.05(C)(1), both counts being felonies of the fourth degree. (Doc. No. 1). Pertinent to this appeal, Count I alleged that on or about August 8, 2016, Appellant did have sexual contact with S.W., not his spouse, and the ability of S.W. to resist or consent was substantially impaired because of S.W.'s mental condition, physical condition, or advanced age, and that Appellant knew or had reasonable cause to believe that S.W.'s ability to resist or consent was substantially impaired because of a mental condition, physical condition, or advanced age. (Doc. No. 1).

**{¶7}** On July 17, 2017, Appellant voluntarily waived his right to a jury trial and elected to be tried by the trial court. (Doc. No. 35). On October 2, 2017, Appellant's bench trial commenced. (Trial, 10/02/2017 Tr.). At the conclusion of the State's case-in-chief, Appellant moved for a judgment of acquittal on both counts pursuant to Crim.R. 29. (*Id.* at 116). The trial court granted Appellant's motion relative to Count II. (*Id.* at 122). However, the trial court found that based

---

[1] Count II, GSI, was unrelated to the incident involving S.W., and was dismissed pursuant to Appellant's Crim.R. 29(A) motion during trial.

-4-

on the evidence presented, "reasonable minds could differ" with regards to Count I, and the trial court overruled Appellant's motion. (*Id.* at 122).

**{¶8}** Appellant then moved to admit Defense Exhibit A[2] into evidence, which was admitted without objection, and rested. (*Id.* at 124). Appellant then renewed his Crim.R. 29 motion (on Count I), which was again denied by the trial court. (*Id.*). After closing arguments, the trial court found Appellant guilty of Count I. (*Id.* at 137). On December 18, 2017, Appellant was sentenced to five years of community control and was classified as a tier one sex offender. (Doc. No. 54). From this judgment Appellant timely appeals, and presents the following assignment of error for our review:

<u>**ASSIGNMENT OF ERROR NO. I**</u>

**THE TRIAL COURT'S VERDICT IS [SIC] NOT SUSTAINED BY SUFFICIENT EVIDENCE.**

<u>**ASSIGNMENT OF ERROR NO. II**</u>

**THE TRIAL COURT'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

<u>**ASSIGNMENT OF ERROR NO. III**</u>

**THE TRIAL COURT ERRED BY RELYING ON EVIDENCE EXCLUSIVELY RELATED TO COUNT II, WHICH IT DISMISSED PURSUANT TO CRIM.P. [SIC] 29(A), TO CONVICT MR. YODER OF COUNT I.**

---

[2] Defense Ex. A is a Physician/Healthcare Provider Order Sheet, and was introduced on cross examination of the State's witness, Kari Crosby. The order, issued on August 29, 2016, calls for the application of Nystatin to the foreskin of S.W.'s penis. (Trial, 10/02/2018 Tr. at 107-110).

{¶9} On appeal, Appellant asserts that the trial court's verdict was not sustained by sufficient evidence and was against the manifest weight of the evidence. Appellant further argues that the trial court erred by relying on evidence related to dismissed Count II to convict him of Count I. For the reasons that follow, we reject Appellant's arguments and affirm the decision of the trial court.

*Appellant's First Assignment of Error*

{¶10} In his first assignment of error, Appellant argues that there was insufficient evidence to convict him of gross sexual imposition. Specifically, Appellant argues that because he had a legitimate and medically proper reason to be touching and manipulating S.W.'s penis, the evidence was insufficient to prove that Appellant had "sexual contact" with S.W. for the purpose of "sexually gratifying" himself. For the reasons outlined below, we disagree.

*Standard of Review*

{¶11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by statute on other grounds in State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). "The relevant inquiry is whether, after viewing the evidence in a light

most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.; see also State v. Owens,* 3rd Dist. Marion No. 9-16-40, 2017-Ohio-2590, 90 N.E.3d 189, ¶ 40. Ultimately, sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

*Analysis*

{¶12} Appellant argues that the State did not prove the elements of GSI beyond a reasonable doubt. Appellant was convicted on one count of GSI, in violation of R.C. 2907.05(A)(5), which states:

> No person shall have *sexual contact* with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * *: [t]he ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age.

(Emphasis added). R.C. 2907.05(A)(5). The Ohio Revised Code defines sexual contact as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, *for the purpose of sexually arousing or gratifying either person.* (Emphasis added). R.C. 2907.01(B). The Revised Code does not define "sexual arousal" or

"sexual gratification." *In re Redmond,* 3rd Dist. Allen No. 1-06-90, 2007-Ohio-3125, ¶ 8. However, the Ohio Supreme Court, in *State v. Dunlap,* defined the culpable mental state of purpose as:

> 'A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.'

*State v. Dunlap,* 129 Ohio St.3d 461, 2011-Ohio-4111, 953 N.E.2d 816, ¶ 24 quoting R.C. 2901.22(A). In determining a person's intent, a court may infer intent from the surrounding circumstances. *State v. Vela,* 3rd Dist. Henry No. 7-14-15, 2015-Ohio-1340, ¶ 17. Ultimately, whether a defendant acted with the purpose to sexually arouse or gratify either person "'is a question of fact to be inferred from the type, nature, and circumstances of the contact.'" *Redmond* at ¶ 8, quoting *In re A.L.,* 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, ¶ 20.

{¶13} In the case before us, Appellant does not dispute that he touched S.W.'s penis, but rather, argues that the State failed to prove he had the specific *purpose* of sexually arousing or gratifying himself or S.W. Appellant avers because he had a medically appropriate reason to touch and manipulate S.W.'s penis (in this instance, applying medicated cream to S.W.'s excoriated skin), he cannot be convicted of GSI. We disagree.

{¶14} The State's evidence demonstrated that Appellant's manipulation of S.W.'s penis was not medically appropriate. Specifically, Bialecki testified that Appellant was "stroking S.W.'s penis." (Trial, 10/02/2017 Tr. at 28). Bialecki also testified that Appellant had S.W.'s whole penis in his hand and was "masturbating" S.W. (*Id.* at 29). Bialecki further testified that she did not observe Appellant apply the medicated cream to S.W.'s penis and did not notice any cream on S.W.'s penis while in Appellant's hand. (*Id.* at 29; 31). Bialecki also testified that she had observed another RCA apply medicated cream to S.W.'s penis on a prior occasion, but the other RCA did not apply the cream (to S.W.'s penis) in a "stroking" manner like Appellant. (*Id.* at 40-41).

{¶15} The State also introduced the testimony of other Brookdale care professionals to demonstrate that Appellant's manipulation of S.W.'s penis was not medically appropriate. Amber Adelsberger, ("Adelsberger"), a Brookdale RCA, testified that she had put medicated cream on the tip of S.W.'s penis as part of her duties as an aide. (*Id.* at 48). However, Adelsberger maintained that in applying the cream she neither grabbed S.W.'s entire penis nor "masturbated" him. (*Id.* at 48). Kyle Schmidlapp ("Schmidlapp"), the (then) Executive Director of Brookdale testified that placing medicated cream on S.W.'s penis would be a violation of the Brookdale Patient Care Plan. (*Id.* at 78). Finally, Kari Crosby ("Crosby"), the Director of Nursing at Brookdale, testified that RCAs were not

permitted to apply any type of medicated cream or ointment to a patient's penis. (*Id.* at 99).

{¶16} Ultimately, regardless of whether or not RCAs were permitted to apply medicated cream to a patient's genitals, the State also introduced the statements of Appellant, made contemporaneously while manipulating S.W.'s penis, to demonstrate "a purpose to sexually arouse or gratify either person." Specifically, Bialecki testified that as Appellant was stroking S.W.'s penis the following exchange occurred:

> **Bialecki: [Appellant] had made a comment to me and said, hey, Heather, look. It's the only penis I can play with. And then he made, like, I still couldn't talk because I didn't know what to say to him. And then he said, well, when we did this before, he asked for more. And I said, who asked for more? Like, really grumpy. And he said, [S.W.] did.**

(*Id.* at 29).

{¶17} In our review we find that Appellant's comments to Bialecki about "playing with" S.W.'s penis and S.W. "asking for more" demonstrate that Appellant possessed the requisite culpable mental state (i.e. purpose) to sexually gratify or sexually arouse himself or S.W.

{¶18} Appellant tries to characterize his comments as nothing more than an "inappropriate joke." In support of this characterization, Appellant directs us to Bialecki's cross-examination, wherein Bialecki testified that the Appellant had a history of trying to be funny by making "off-color" comments or "off-color"

jokes. (*Id.* at 42-43). Appellant also directs us to the testimony of Adelsberger, who testified that Appellant had "smacked [her] butt" and made comments of a sexual nature (to her) while changing another resident's diaper. (*Id.* at 59).

{¶19} Appellant further directs us to our decision in *In re Redmond,* arguing that the State failed to prove that he had the requisite purpose of sexual arousal or sexual gratification. In *In re Redmond,* a juvenile male had lifted the skirt of a female victim on two separate occasions and touched her "reproductive area" and upper thigh or buttocks. *Redmond,* 3rd Dist. Allen No. 1-06-90, 2007-Ohio-3125, ¶ 9. And, on at least one occasion there was a small audience of students who observed the touching. *Id.* During his trial, the juvenile testified that he was "playing around" and thought it was a joke to lift the victim's skirt the second time. *Id.* Finding that the evidence demonstrated reasons other than a desire to sexually arouse or gratify the juvenile or victim, this Court reversed the lower court's conviction. *Id.* at ¶ 12.

{¶20} However, we find Appellant's situation distinguishable from the defendant's situation in *Redmond*. Most notably, the juvenile (in *Redmond*) testified that he was "playing around," and thought that it was a joke to lift the victim's skirt. *Id.* at ¶ 9. Conversely, in the case before us, we have Bialecki's testimony, who testified that she did not perceive Appellant's actions to be a joke. Moreover, the juvenile in *Redmond* testified that he was not thinking in a sexual

manner when he lifted the victim's skirt. *Id.* However, in the instant matter, there was direct evidence as to Appellant's state of mind when he manipulated S.W.'s penis; specifically, Bialecki's testimony that Appellant said to her that S.W.'s penis was the only penis he gets to "play with" and that the victim had asked for more previously indicating sexual gratification of the Appellant and possibly the victim.

{¶21} Finally, as we stated in *Redmond,* many sexual offenses occur in a private or semi-private setting. *Id.* at ¶ 10. Since this incident occurred in a semi-private setting, we are not persuaded that Appellant's actions were a bad joke. Furthermore, there is *no evidence* in the record supporting Appellant's "joking" argument regarding *this particular incident*. Thus, we find Appellant's reliance upon *Redmond* to be misplaced.

{¶22} Based on the testimony introduced at trial, the State produced sufficient evidence, which if believed, proved that Appellant touched S.W. with the purpose of sexual arousal or sexual gratification. Accordingly, Appellant's first assignment of error is overruled.

### *Appellant's Second Assignment of Error*

{¶23} In his second assignment of error, Appellant argues that there is no evidence in the record that would lead a reasonable finder of fact to conclude that he had contact with S.W. for the purpose of sexual gratification or sexual arousal.

Appellant further argues that Bialecki's testimony about the incident was not credible. For the reasons that follow, we disagree.

*Standard of Review*

**{¶24}** "[I]n determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, 'weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. White,* 3rd Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 11 quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *Id.* citing *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "When applying the manifest weight standard, 'only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment.'" *Id.* quoting *State v. Haller,* 3rd Dist. Allen No. 1-11-34, 2012-Ohio-5233, 982 N.E.2d 111, ¶ 9.

*Analysis*

{¶25} The Eighth District Court of Appeals identified the following eight factors as a guideline to assist a reviewing court to determine whether a decision of the trial court is against the manifest weight of the evidence:

1. A reviewing court is not required to accept the incredible as true;

2. Whether the evidence is uncontradicted;

3. Whether a witness was impeached;

4. What was not proved;

5. Certainty of evidence;

6. Reliability of evidence;

7. Whether witness' testimony is self-serving;

8. And whether evidence is vague, uncertain, conflicting, or fragmentary.

*State v. Mattison,* 23 Ohio App.3d 10, 14, 490 N.E.2d 926 (8th Dist.1995). Applying these factors to this case, we find that the decision of the trial court was not against the weight of the evidence.

### *Uncontradicted Evidence*

{¶26} As discussed in the first assignment of error, there is no evidence in the record to contradict Bialecki's testimony that on August 7th or 8th of 2016, Appellant "stroked" S.W.'s penis and made comments of a sexual nature

(specifically that S.W.'s penis was the only penis that Appellant got to "play with" and that when it happened before, S.W. "asked for more"). Even though trial testimony revealed that the Appellant had a history of making crass comments, there is no evidence in the record to support his argument that this *particular instance* was just "inappropriate joking." Moreover, the evidence demonstrated that Appellant was not the spouse of S.W., and that the ability of S.W. to resist or consent was impaired because of a mental or physical condition. (*See generally,* Trial, 10/02/2017 Tr. at 21; 32; 38). Since Appellant's evidence failed to contradict the elements of GSI as established by the State, this factor does not impact the weight of the evidence.

*Witness Impeached*

{¶27} Appellant draws into question the testimony of Bialecki, directing us to the statements of the trial court finding Appellant guilty. Specifically, the trial court, in making its finding of guilt, indicated that it did not believe that the incident took place for "three to five minutes," as testified to by Bialecki. (*See generally, Id.* at 30; 136). However, the trial court clarified its statements (regarding the length of time Bialecki testified to), stating:

> **The only thing that I find questionable in her entire testimony was the quote of three to five minutes. Although, certainly, when you see something that sticks in your mind, it can seem like an eternity. But the Court's conclusion is it probably wasn't three to five minutes.**

(*Id.* at 136). Ultimately, the trial court did not question Bialecki's credibility, only her recollection of the length of time of the event. This finding does not indicate a lack of credibility on Bialecki's part, and certainly does not rise to the level of a formal impeachment. Thus, we find this factor does not impact the weight of the evidence.

*Self-Serving Testimony*

{¶28} Appellant attempts to characterize Bialecki's testimony as self-serving, arguing that after Bialecki reported the incident (regarding S.W.), she was promoted to a higher position at Brookdale. However, even though the Appellant asserts that Bialecki received a promotion from reporting Appellant, the record falls short of such suggestion. Specifically, Bialecki testified to the following regarding her promotion at Brookdale:

> **Q.** **(Questioning by Attorney Rodger for the State) Okay. Did you receive any benefit for reporting this?**
>
> **A.** **(Bialecki) No.**
>
> **Q.** **Were you promoted as a result of this?**
>
> **A.** **No.**
>
> **Q.** **Did you receive any pay raises or anything?**
>
> **A.** **No. I got nothing but a headache.**

(*Id.* at 33).

{¶29} We find the record void of any testimony or evidence demonstrating that Bialecki received any benefit as a direct result of reporting Appellant. With no evidence of self-serving testimony, we find this factor does not impact the weight of the evidence.

*Vague or Uncertain Testimony*

{¶30} Bialecki's testimony of the events occurring between Appellant and S.W. was not vague or uncertain. While Appellant directs us to testimony of the uncertainty as to whether aides were or were not permitted to apply medicated cream to resident's genitals and to the proper procedure for applying cream, such testimony does not make the evidence regarding the events between Appellant and S.W. vague or uncertain. Bialecki's testimony was clear that she saw Appellant "stroke" S.W.'s penis and comment that "this was the only penis (he) could play with." We find no vagueness or uncertainty regarding the incident as testified to by Bialecki. Thus, this factor does not impact the weight of the evidence.

{¶31} Finally, while not a factor specifically outlined in *Mattison*, Appellant argues that there is no evidence in the record that would lead a reasonable factfinder to conclude that his contact with S.W. was for the purpose of sexual gratification or arousal. However, as we determined in the first assignment of error, the State introduced testimony, through an eye witness, that the Appellant was "stroking" or "masturbating" S.W.'s penis. And, while doing so, Appellant

made comments of a sexual nature, stating (that) S.W.'s penis was the only penis he could "play with" and that when Appellant had touched S.W.'s penis previously, S.W. "asked for more." These comments (of Appellant) were sufficient to lead a reasonable trier of fact to conclude that Appellant had the specific purpose to sexually arouse or gratify himself or S.W. *See generally, State v. Mundy,* 99 Ohio App.3d 275, 288, 650 N.E.2d 502 (2nd Dist.1994) (the determination of a defendant's mental state, *absent some comment on his or her part,* must be determined by the nature of the act when viewed in conjunction with the surrounding facts and circumstances).

{¶32} Since the comments of the Appellant are evidence of his mental state, and because the factors outlined in *Mattison* support conviction, we find that Appellant's conviction was not against the manifest weight of the evidence and overrule the second assignment of error.

## *Appellant's Third Assignment of Error*

{¶33} In his third assignment of error, Appellant argues that the trial court relied on evidence from the acquitted count to support its conviction. For the reasons outlined below, we disagree.

## *Standard of Review*

{¶34} "'The admission or exclusion of relevant evidence rests in the sound discretion of the trial court.'" *State v. Thompson,* 3rd Dist. Henry No. 7-16-10,

2017-Ohio-792, 85 N.E.3d 1108, ¶ 18 quoting *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). "[A]bsent an abuse of discretion resulting in material prejudice to a party, an appellate court will not reverse a trial court's decision on the admission of evidence." *State ex rel. Hines v. Holland,* 3rd Dist. Allen No. 1-95-62, 1996 WL 16869, *2. "Under an abuse of discretion standard, a lower court's decision will not be reversed for mere error, but only when the court's decision is unreasonable, arbitrary, or unconscionable." *Morrow v. Becker,* 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9. Given that the abuse of discretion standard is a deferential review, "[i]t is not sufficient for an appellate court to determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion or is, itself, less persuaded by the trial court's reasoning process than by countervailing arguments." *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 401, 1998-Ohio-403, 696 N.E.2d 575.

*Analysis*

{¶35} The trial court, in finding Appellant guilty of GSI, issued the following statement:

> **Trial Court:  Thank you.  This is a case where as early as February to March of 2016, the defendant was engaging in**

aberrant behavior. And while the Court's found that behavior at the time in March not to rise to the level that warrants a conviction for what he is charged in count two, the Court certainly concludes that the behavior on the night in question with that patient was inappropriate in terms of the method for getting her back onto the bed. The testimony of the second witness in the case, Adelsberger, was that he pushed her onto the bed with his pelvic area while not doing anything inappropriately with his hands. Certainly, that's not the typical way that you get somebody back on the bed. And then we move to the month of August with [S.W.]. The witness, as I said earlier, said that she and [Appellant] went to – into [S.W.]'s room. That [Appellant] checked him. That she got a new Depends – Depend – Depends out of the closet on the far side. And that the bed had been pulled away from the wall with [Appellant] on the other side. He then asked her to hand the lotion to him. She grabbed the cream, turned around, and handed it to him, turned back. And I didn't get what she was doing when she turned back. But she turned back only to turn around once again. And her testimony was that she saw [Appellant] with the whole penis in his hand masturbating him. That the length of time was three to five minutes. That she froze for a second. At which time he said, this is the only penis I can play with. And when I did this before, he asked for more. The – she testified further that when they were finished, that she went into the bathroom. That she couldn't believe what she saw and that she would never forget it. The only thing that I find questionable in her entire testimony was the quote of three to five minutes. Although certainly, when you see something that sticks in your mind, it can seem like an eternity. But the Court's conclusion is it probably wasn't three to five minutes. But the Court's further conclusion from the testimony before the Court here today is that the procedure for applying cream to the penis was clearly not followed. It was the procedure was [sic] to grab – to take a hold and pull the skin down with two fingers, applying the cream to the tip of the penis. It's clear from her testimony that she saw the defendant with the whole penis in his hand. And she described that as "masturbating him." That action together with, this is the only penis I get to play with, leaves one, in my opinion, with the conclusion that there's no

**other reason to do it. That playing equals – getting to play with something in this case equals sexual gratification to [Appellant]. And that [Appellant] engaged in that activity on the evening in question. The conduct was reported almost immediately. And from what I – from what I've heard in the courtroom, the testimony the witness seems to be consistent throughout the hearing in December and the hearing yet once again today. She, once again, when questioned on cross examination, stated – admitted that the questioning from Mr. Tyack that the penis was flaccid, but that [Appellant] had the penis in his hand and was stroking it. Then he questioned her about the procedure that was used. And she told us once again about the procedure. She testified on redirect that she – that it was not a joke and that he said – he made the comments with the penis in his hand. The Court's conclusion after evaluating all the evidence and the exhibits that were admitted in this case is that the defendant is guilty beyond a reasonable doubt. And the Court makes that finding. Thank you. \* \* \*.**

(Trial, 10/02/2018 Tr. at 135-37).

{¶36} While the trial court may have summarized some of the testimony and evidence it received as to Count II in finding Appellant guilty of Count I, there is no indication that the trial court *solely relied* on such evidence in determining guilt on Count I. Additionally, under Evid.R. 404(B), a trial court may consider evidence of other crimes, wrongs or acts in order to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); *see also State v. Carter,* 3rd Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 63, appeal not allowed, 151 Ohio St.3d 1502, 2018-Ohio-365, 90 N.E.3d 946, ¶ 63. In our review, we find the trial court's summary statements

reveal that it may have considered Appellant's other acts to show proof of opportunity, intent, or absence of mistake or accident.

**{¶37}** Moreover, we find the trial court adequately summarized the evidence upon which it relied in convicting Appellant of Count I, GSI. As such, we find there is competent and credible evidence in the record to support the trial court's guilty verdict. Thus, we find no abuse of discretion, and we overrule Appellant's third assignment of error.

### *Conclusion*

**{¶38}** Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we overrule Appellant's first, second, and third assignments of error and affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**